**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IMPULSE DOWNHOLE SOLUTIONS LTD and IMPULSE DOWNHOLE TOOLS USA LTD, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 4:23-cv-02954 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DOWNHOLE WELL SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DOWNHOLE WELL SOLUTIONS, LLC'S
ANSWER TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIMS**

In accordance with Federal Rules of Civil Procedure 8 and 12, Defendant Downhole Well Solutions, LLC ("Defendant" or "DWS") hereby files its Answer to Plaintiffs Impulse Downhole Solutions Ltd. ("Impulse Solutions") and Impulse Downhole Tools USA Ltd. ("Impulse Tools") (Impulse Solutions and Impulse Tools collectively, "Plaintiffs") Complaint (ECF No. 1, hereafter the "Complaint"). The numbered paragraphs in this Answer correspond to the like-numbered paragraphs of the Complaint, to the extent applicable. DWS denies the allegations and characterizations in the Complaint unless expressly admitted herein.

## PARTIES

1.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 1 of the Complaint and, on that basis, denies them.

2.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 of the Complaint and, on that basis, denies them.

3.    Paragraph 3 of the Complaint includes legal conclusions and does not include allegations that require a response. To the extent that Paragraph 3 of the Complaint includes any

1

allegations, DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3 of the Complaint and, on that basis, denies them. DWS denies that Impulse is entitled to any relief.

4.      DWS admits that Downhole Well Solutions, LLC is a limited liability company organized and existing under the laws of the State of Texas. DWS admits that it maintains an office at 18300 Strack Drive, Suite 900, Spring, Texas 77379. To the extent not expressly admitted in this Paragraph 4, DWS denies any remaining factual allegations of Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.      DWS admits that the Complaint purports to set forth an action for alleged patent infringement under the patent laws of the United States. DWS admits that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 5, DWS denies any remaining factual allegations of Paragraph 5 of the Complaint.

6.      DWS admits that it is subject to the personal jurisdiction of this Court for purposes of Plaintiff's Complaint. DWS admits that it is a limited liability company organized and existing under the laws of the State of Texas. DWS admits that it maintains an office at 18300 Strack Drive, Suite 900, Spring, Texas 77379. DWS denies that it has committed any acts of patent infringement or any other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 6, DWS denies any remaining factual allegations of Paragraph 6 of the Complaint.

7.    DWS admits that venue in this District is proper for this case.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent not expressly admitted in this Paragraph 7, DWS denies any remaining factual allegations of Paragraph 7 of the Complaint.

## ALLEGED FACTS ALLEGEDLY COMMON TO EACH CLAIM FOR RELIEF

### A.    Alleged Technology Background

8.    DWS admits that oil and gas have been extracted from subterranean deposits for over a hundred years.  DWS admits that directional drilling provides a means of deviating a well from its downward path to access deposits that lie within a formation at greater lateral distances from the rig's surface location.  DWS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 of the Complaint and, on that basis, denies them.  To the extent that Paragraph 8 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 8 of the Complaint.

9.    DWS admits that directional drilling may involve the use of a positive displacement motor.  DWS admits that hydraulic flow energy may be converted into rotation of a rotor using a mud motor.  DWS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9 of the Complaint and, on that basis, denies them.  To the extent that Paragraph 9 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 9 of the Complaint.

10.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10 of the Complaint and, on that basis, denies them.

### B.    Plaintiffs' Allegations Regarding its Business and Alleged Inventions

11.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11 of the Complaint and, on that basis, denies them.

12.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Complaint and, on that basis, denies them.

13.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 of the Complaint and, on that basis, denies them.

14.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Complaint and, on that basis, denies them.

15.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Complaint and, on that basis, denies them.

16.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 of the Complaint and, on that basis, denies them.

17.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17 of the Complaint and, on that basis, denies them.

18.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 18 of the Complaint and, on that basis, denies them.

19.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 19 of the Complaint and, on that basis, denies them.

20.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 of the Complaint and, on that basis, denies them.

**C.      Plaintiffs' Allegations Regarding DWS' Business and Infringing Acts**

21.     DWS admits that it manufactures, sells, offers for sale, rents, and/or offers for rent downhole vibration tools known as PowerGLIDE and PowerGLIDE On Demand ("OD").  DWS admits that Exhibit 10 to the Complaint states that PowerGLIDE "produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool," and that PowerGLIDE is "able to increase ROP and weight transfer to the bit, while mitigating extended-

4

reach drilling challenges such as stick-slip." DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 21, DWS denies any remaining factual allegations of Paragraph 21 of the Complaint.

22.    DWS admits that Exhibit 11 to the Complaint states that PowerGLIDE OD "allows customers to easily turn on PowerGLIDE downhole with an activation ball." DWS admits that Exhibit 11 to the Complaint states "[s]imply drop the activation ball from surface and set PowerGLIDE in motion." DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 22, DWS denies any remaining factual allegations of Paragraph 22 of the Complaint.

23.    DWS admits that it was founded in 2019. DWS admits that Taylor Janca, Chandler Janca, and Avinash Cuddapah are Managing Partners of DWS. DWS admits that Avinash Cuddapah began his oil & gas service career as a Mechanical Engineer in National Oilwell Varco's downhole tool business segment. DWS admits that Avinash Cuddapah spent two years at LEAM Drilling Services as a Product Line Manager. DWS admits that Taylor Janca served three years at LEAM as Vice President of Sales before co-founding DWS. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 23, DWS denies any remaining factual allegations of Paragraph 23 of the Complaint.

24.    DWS admits that Avinash Cuddapah is identified as one of three inventors of U.S. Patent No. 10,590,709. DWS admits that, as reflected on the face of U.S. Patent No. 10,590,709, the application that led to U.S. Patent No. 10,590,709 was filed on or about July 18, 2017. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs'

alleged claims. DWS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24 of the Complaint and, on that basis, denies them. To the extent not expressly admitted in this Paragraph 24, DWS denies any remaining factual allegations of Paragraph 24 of the Complaint.

25.    DWS admits that U.S. Patent No. 10,590,709 is directed to a downhole oscillation apparatus. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. DWS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25 of the Complaint and, on that basis, denies them. To the extent not expressly admitted in this Paragraph 25, DWS denies any remaining factual allegations of Paragraph 25 of the Complaint.

26.    DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the Complaint and, on that basis, denies them. To the extent not expressly admitted in this Paragraph 26, DWS denies any remaining factual allegations of Paragraph 26 of the Complaint.

27.    DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 of the Complaint and, on that basis, denies them. To the extent not expressly admitted in this Paragraph 27, DWS denies any remaining factual allegations of Paragraph 27 of the Complaint.

28.    Paragraph 28 of the Complaint does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to

Plaintiffs' alleged claims.    To the extent that Paragraph 28 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 28 of the Complaint.

<u>COUNT I</u>

**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,765,584**

29.     Paragraph 29 of the Complaint does not include allegations that require a response. To the extent that Paragraph 29 of the Complaint includes any allegations incorporated by reference, DWS incorporates its responses to those allegations as though fully set forth herein. DWS denies any remaining factual allegations of Paragraph 29 of the Complaint.

30.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 of the Complaint and, on that basis, denies them.

31.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the Complaint and, on that basis, denies them.

32.     Denied.

33.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 33, DWS denies any remaining factual allegations of Paragraph 33 of the Complaint.

34.     DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 34, DWS denies any remaining factual allegations of Paragraph 34 of the Complaint.

35.     DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 35, DWS denies any remaining factual allegations of Paragraph 35 of the Complaint.

36.     DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 36, DWS denies any remaining factual allegations of Paragraph 36 of the Complaint.

37.     Denied.

38.     Denied.

39.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 39, DWS denies any remaining factual allegations of Paragraph 39 of the Complaint.

40.     Denied.

41.     Denied.

42.     Denied.

43.     DWS admits that it received a letter from Douglas Kinsella, President of Impulse Tools in or about October 2022.  DWS admits that Mr. Kinsella's October 2022 letter identified U.S. Patent No. 9,765,584 ("the '584 patent").  DWS denies that Mr. Kinsella's October 2022 letter stated that DWS was infringing any claim of the '584 patent.  DWS denies that Mr. Kinsella's October 2022 letter detailed any basis for any alleged infringement by DWS of any claim of the '584 patent.  DWS denies that it has committed any acts of patent infringement or

other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 43, DWS denies any remaining factual allegations of Paragraph 43 of the Complaint.

44.    DWS admits that Innovex Downhole Solutions, Inc. acquired a minority interest in DWS in or about May 2023. DWS denies any remaining factual allegations of Paragraph 44 of the Complaint.

45.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45 of the Complaint and, on that basis, denies them.

46.    Paragraph 46 of the Complaint includes legal conclusions and does not include allegations that require a response. To the extent that Paragraph 46 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 46 of the Complaint. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.

47.    Paragraph 47 of the Complaint includes legal conclusions and does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 47 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 47 of the Complaint.

48.    Denied.

49.    Denied.

50.    Denied.

51.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51 of the Complaint and, on that basis, denies them.

52.    Denied.

## COUNT II

### ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,637,976

53.     Paragraph 53 of the Complaint does not include allegations that require a response. To the extent that Paragraph 53 of the Complaint includes any allegations incorporated by reference, DWS incorporates its responses to those allegations as though fully set forth herein. DWS denies any remaining factual allegations of Paragraph 53 of the Complaint.

54.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54 of the Complaint and, on that basis, denies them.

55.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55 of the Complaint and, on that basis, denies them.

56.     Denied.

57.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 57, DWS denies any remaining factual allegations of Paragraph 57 of the Complaint.

58.     DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 58, DWS denies any remaining factual allegations of Paragraph 58 of the Complaint.

59.     DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock

tool." To the extent not expressly admitted in this Paragraph 59, DWS denies any remaining factual allegations of Paragraph 59 of the Complaint.

60.     DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool." To the extent not expressly admitted in this Paragraph 60, DWS denies any remaining factual allegations of Paragraph 60 of the Complaint.

61.     Denied.

62.     Denied.

63.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations." To the extent not expressly admitted in this Paragraph 63, DWS denies any remaining factual allegations of Paragraph 63 of the Complaint.

64.     Denied.

65.     Denied.

66.     DWS admits that it received a letter from Douglas Kinsella, President of Impulse Tools in or about October 2022. DWS admits that Mr. Kinsella's October 2022 letter identified U.S. Patent No. 9,637,976 ("the '976 patent"). DWS denies that Mr. Kinsella's October 2022 letter stated that DWS was infringing any claim of the '976 patent. DWS denies that Mr. Kinsella's October 2022 letter detailed any basis for any alleged infringement by DWS of any claim of the '976 patent. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 66, DWS denies any remaining factual allegations of Paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint includes legal conclusions and does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 67 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 67 of the Complaint.

68.     Paragraph 68 of the Complaint includes legal conclusions and does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 68 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 68 of the Complaint.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

## COUNT III

### ALLEGED INFRINGEMENT OF U.S. PATENT NO. 11,268,337

73.     Paragraph 73 of the Complaint does not include allegations that require a response. To the extent that Paragraph 73 of the Complaint includes any allegations incorporated by reference, DWS incorporates its responses to those allegations as though fully set forth herein. DWS denies any remaining factual allegations of Paragraph 73 of the Complaint.

74.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74 of the Complaint and, on that basis, denies them.

75.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75 of the Complaint and, on that basis, denies them.

76.     Denied.

77.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 77, DWS denies any remaining factual allegations of Paragraph 77 of the Complaint.

78.     DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 78, DWS denies any remaining factual allegations of Paragraph 78 of the Complaint.

79.     DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 79, DWS denies any remaining factual allegations of Paragraph 79 of the Complaint.

80.     DWS admits that Exhibit 11 to the Complaint states "[m]ore control with PowerGLIDE On-Demand. Release the activation ball from the surface and turn on the most powerful friction reduction tool on the market."  To the extent not expressly admitted in this Paragraph 80, DWS denies any remaining factual allegations of Paragraph 80 of the Complaint.

81.    DWS admits that Exhibit 9 to the Complaint states "Now Available With PowerGLIDE On-Demand." To the extent not expressly admitted in this Paragraph 81, DWS denies any remaining factual allegations of Paragraph 81 of the Complaint.

82.    Denied.

83.    Denied.

84.    DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations." To the extent not expressly admitted in this Paragraph 84, DWS denies any remaining factual allegations of Paragraph 84 of the Complaint.

85.    Denied.

86.    Denied.

87.    DWS admits that it received a letter from Douglas Kinsella, President of Impulse Tools in or about October 2022. DWS admits that Mr. Kinsella's October 2022 letter identified U.S. Patent No. 11,268,337 ("the '337 patent"). DWS denies that Mr. Kinsella's October 2022 letter stated that DWS was infringing any claim of the '337 patent. DWS denies that Mr. Kinsella's October 2022 letter detailed any basis for any alleged infringement by DWS of any claim of the '337 patent. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent not expressly admitted in this Paragraph 87, DWS denies any remaining factual allegations of Paragraph 87 of the Complaint.

88.    Paragraph 88 of the Complaint includes legal conclusions and does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 88

of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 88 of the Complaint.

89.     Paragraph 89 of the Complaint includes legal conclusions and does not include allegations that require a response.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent that Paragraph 89 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 89 of the Complaint.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Denied.

**COUNT IV**

**ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,648,265**

94.     Paragraph 94 of the Complaint does not include allegations that require a response. To the extent that Paragraph 94 of the Complaint includes any allegations incorporated by reference, DWS incorporates its responses to those allegations as though fully set forth herein. DWS denies any remaining factual allegations of Paragraph 94 of the Complaint.

95.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95 of the Complaint and, on that basis, denies them.

96.     DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 96 of the Complaint and, on that basis, denies them.

97.     Denied.

98.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not

expressly admitted in this Paragraph 98, DWS denies any remaining factual allegations of Paragraph 98 of the Complaint.

99.     DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 99, DWS denies any remaining factual allegations of Paragraph 99 of the Complaint.

100.    DWS admits that Exhibit 11 to the Complaint refers to "PowerGLIDE Tandem Run with On Demand."  To the extent not expressly admitted in this Paragraph 100, DWS denies any remaining factual allegations of Paragraph 100 of the Complaint.

101.    DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run."  DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool."  To the extent not expressly admitted in this Paragraph 101, DWS denies any remaining factual allegations of Paragraph 101 of the Complaint.

102.    DWS admits that Exhibit 11 to the Complaint states "[m]ore control with PowerGLIDE On-Demand. Release the activation ball from the surface and turn on the most powerful friction reduction tool on the market."  To the extent not expressly admitted in this Paragraph 102, DWS denies any remaining factual allegations of Paragraph 102 of the Complaint.

103.    DWS admits that Exhibit 11 to the Complaint states "[m]ore control with PowerGLIDE On-Demand. Release the activation ball from the surface and turn on the most powerful friction reduction tool on the market."  To the extent not expressly admitted in this Paragraph 103, DWS denies any remaining factual allegations of Paragraph 103 of the Complaint.

104.    Denied.

105.    DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 105, DWS denies any remaining factual allegations of Paragraph 105 of the Complaint.

106.    Denied.

107.    Denied.

108.    DWS admits that it received a letter from Douglas Kinsella, President of Impulse Tools in or about October 2022.  DWS denies that Mr. Kinsella's October 2022 letter identified U.S. Patent No. 10,648,265 ("the '265 patent").  DWS denies that Mr. Kinsella's October 2022 letter stated that DWS was infringing any claim of the '265 patent.  DWS denies that Mr. Kinsella's October 2022 letter detailed any basis for any alleged infringement by DWS of any claim of the '265 patent.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent not expressly admitted in this Paragraph 108, DWS denies any remaining factual allegations of Paragraph 108 of the Complaint. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' claims.  To the extent not expressly admitted in this Paragraph 108, DWS denies any remaining factual allegations of Paragraph 108 of the Complaint.

109.    Paragraph 109 of the Complaint includes legal conclusions and does not include allegations that require a response.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent that Paragraph 109 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 109 of the Complaint.

110.    Paragraph 110 of the Complaint includes legal conclusions and does not include allegations that require a response.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent that Paragraph 110 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 110 of the Complaint.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

## COUNT V

## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,633,920

115.    Paragraph 115 of the Complaint does not include allegations that require a response.  To the extent that Paragraph 115 of the Complaint includes any allegations incorporated by reference, DWS incorporates its responses to those allegations as though fully set forth herein. DWS denies any remaining factual allegations of Paragraph 115 of the Complaint.

116.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116 of the Complaint and, on that basis, denies them.

117.    DWS lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117 of the Complaint and, on that basis, denies them.

118.    Denied.

119.    DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly

admitted in this Paragraph 119, DWS denies any remaining factual allegations of Paragraph 119 of the Complaint.

120.    DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 10 to the Complaint states that "[t]he PowerGLIDE produces strictly axial oscillations, which are generated in conjunction with a bi-directional shock tool." To the extent not expressly admitted in this Paragraph 120, DWS denies any remaining factual allegations of Paragraph 120 of the Complaint.

121.    DWS admits that Exhibit 9 to the Complaint states "[u]tilizes premium materials and more efficient rotor speed for more reliable and consistent performance throughout the run." DWS admits that Exhibit 9 to the Complaint states "[a]ble to maintain strong performance throughout a wider flow rate range without needing re-dress." DWS admits that Exhibit 9 to the Complaint states "Now Available With PowerGLIDE On Demand." To the extent not expressly admitted in this Paragraph 121, DWS denies any remaining factual allegations of Paragraph 121 of the Complaint.

122.    DWS admits that Exhibit 9 to the Complaint states "Now Available With PowerGLIDE On Demand." To the extent not expressly admitted in this Paragraph 122, DWS denies any remaining factual allegations of Paragraph 122 of the Complaint.

123.    DWS admits that Exhibit 9 to the Complaint states "Now Available With PowerGLIDE On Demand." DWS admits that Exhibit 11 to the Complaint states "[r]elease the activation ball from surface and turn on the most powerful friction reduction tool on the market" To the extent not expressly admitted in this Paragraph 123, DWS denies any remaining factual allegations of Paragraph 123 of the Complaint.

124.    DWS admits that Exhibit 11 to the Complaint states "[r]elease the activation ball from surface and turn on the most powerful friction reduction tool on the market"  To the extent not expressly admitted in this Paragraph 124, DWS denies any remaining factual allegations of Paragraph 124 of the Complaint.

125.    DWS admits that Exhibit 10 to the Complaint states "[m]aximize your efficiency by introducing the PowerGLIDE oscillation tool into your drilling operations."  To the extent not expressly admitted in this Paragraph 125, DWS denies any remaining factual allegations of Paragraph 125 of the Complaint.

126.    Denied.

127.    Denied.

128.    DWS admits that it received a letter from Douglas Kinsella, President of Impulse Tools in or about October 2022.  DWS denies that Mr. Kinsella's October 2022 letter identified U.S. Patent No. 10,633,920 ("the '920 patent").  DWS denies that Mr. Kinsella's October 2022 letter stated that DWS was infringing any claim of the '920 patent.  DWS denies that Mr. Kinsella's October 2022 letter detailed any basis for any alleged infringement by DWS of any claim of the '920 patent.  DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims.  To the extent not expressly admitted in this Paragraph 128, DWS denies any remaining factual allegations of Paragraph 128 of the Complaint. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' claims.  To the extent not expressly admitted in this Paragraph 108, DWS denies any remaining factual allegations of Paragraph 108 of the Complaint.

129.    Paragraph 129 of the Complaint includes legal conclusions and does not include allegations that require a response.  DWS denies that it has committed any acts of patent

infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 129 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 129 of the Complaint.

130.    Paragraph 130 of the Complaint includes legal conclusions and does not include allegations that require a response. DWS denies that it has committed any acts of patent infringement or other torts giving rise to Plaintiffs' alleged claims. To the extent that Paragraph 130 of the Complaint includes any allegations, DWS denies the factual allegations of Paragraph 130 of the Complaint.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

## PLAINTIFFS' PRAYER FOR RELIEF

135.    DWS denies the underlying allegations of Plaintiffs' prayer for relief, denies that Plaintiffs are entitled to any relief whatsoever, and requests that the Court deny all relief to Plaintiffs and enter judgment in favor of DWS on all claims and award DWS its costs and reasonable attorney fees and any further relief as the Court may deem appropriate. To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, DWS denies them.

## AFFIRMATIVE DEFENSES

136.    DWS asserts the following Affirmative Defenses in response to Plaintiffs' Complaint. Assertion of these defenses is not a concession that DWS has the burden of proving the matter asserted. DWS reserves its right to amend its Answer to add additional defenses,

including instances of inequitable conduct, as they become known throughout the course of discovery in this case. DWS incorporates by reference each of its answers to Paragraphs 1 to 135 as set forth above with each of the following defenses as if fully set forth herein.

### A.   FIRST AFFIRMATIVE DEFENSE: NON-INFRINGEMENT

137.   DWS has not infringed, and does not infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of the patents-in-suit, whether directly, indirectly, individually, jointly, contributorily, and/or by inducement.

### B.   SECOND AFFIRMATIVE DEFENSE: INVALIDITY

138.   The claims of the patents-in-suit are invalid, unenforceable, and/or ineligible at least because they fail to satisfy one or more of the conditions or requirements for patentability specified in Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112, the rules, regulations, and laws pertaining thereto, and/or under other judicially created bases for invalidity and ineligibility, including, but not limited to, the non-statutory doctrine of double patenting.

### C.   THIRD AFFIRMATIVE DEFENSE: LIMITATION ON DAMAGES

139.   Plaintiffs' claims for relief are statutorily limited, in whole or in part, by Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 286 and/or 287.

### D.   FOURTH AFFIRMATIVE DEFENSE: LACK OF KNOWLEDGE AND SUBSTANTIAL NON-INFRINGING USES

140.   Plaintiffs' claims that DWS indirectly infringes the patents-in-suit either contributorily or by inducement, are barred, in whole or in part, because DWS is not liable to Plaintiffs for the allegedly infringing acts for any time periods during which DWS did not know of the patents-in-suit and/or did not have the specific intent to cause infringement of the patents-in-suit and/or otherwise did not know that its actions would constitute indirect

infringement.  In addition, any and all products or actions accused of infringement have substantial uses that do not infringe and do not induce or contribute to the infringement of the claims of the patents-in-suit.

### E.    FIFTH AFFIRMATIVE DEFENSE: LICENSE

141.    Plaintiffs' claims of patent infringement are barred to the extent the alleged infringement is licensed, either expressly or impliedly, or otherwise authorized.  Plaintiffs' claims of patent infringement are also barred to the extent that Plaintiffs have exhausted its rights and remedies as to the alleged infringement.

### F.    SIXTH AFFIRMATIVE DEFENSE: ESTOPPEL

142.    Plaintiffs' claims are barred by the doctrine of prosecution history estoppel, claim vitiation, and/or recapture based on statements, representations, and admissions made during the prosecution of the patent applications resulting in the patents-in-suit before the USPTO and/or during the prosecution of related patent applications.

### G.    SEVENTH AFFIRMATIVE DEFENSE: EQUITABLE DEFENSES

143.    Plaintiffs' claims are barred, in whole or in part, by equitable doctrines, including, but not limited to, waiver, estoppel, acquiescence, patent misuse, and/or unclean hands.

### H.    EIGHTH AFFIRMATIVE DEFENSE: NOT AN EXCEPTIONAL CASE

144.    Plaintiffs cannot prove that this is an exceptional case justifying an award of attorney's fees against DWS pursuant to 35 U.S.C. § 285.

### I.    NINTH AFFIRMATIVE DEFENSE: NO ENTITLEMENT TO INJUNCTIVE RELIEF

145.    Plaintiffs cannot prove that they are entitled to injunctive relief because there exists an adequate remedy at law and Plaintiffs' claims otherwise fail to meet the requirements of such relief.

### J.    TENTH AFFIRMATIVE DEFENSE: NO WILLFUL INFRINGEMENT

146.    DWS has not willfully or deliberately infringed any claim of the patents-in-suit.

### K.    ELEVENTH AFFIRMATIVE DEFENSE: INEQUITABLE CONDUCT

147.    One or more of the patents-in-suit is unenforceable due to inequitable conduct. Upon information and belief, at least Troy Lorenson, who is a named inventor on each of the patents-in-suit, had knowledge of multiple material prior art references that were intentionally not submitted to the Patent Office in violation of the duty to disclose information material to patentability per the requirements of 37 C.F.R. § 1.56.

148.    With respect to at least the '976 patent, there are thirteen prior art references that were cited by the Examiner during the prosecution of the '976 patent that were not subsequently cited during the prosecution of one or more of the '584 patent, the '920 patent, the '265 patent, and the '337 patent.  Upon information and belief, these thirteen prior art references are material at least because they were cited by the Examiner during prosecution of the '976 patent.  Upon information and belief, Troy Lorenson, by virtue of his participation in the prosecution of the '976 patent, had knowledge of these thirteen material prior art references and intentionally did not disclose these thirteen material prior art references in the prosecution of one or more of the '584 patent, the '920 patent, the '265 patent, and the '337 patent in violation of 37 C.F.R. § 1.56. Upon information and belief, Troy Lorenson had knowledge of additional prior art references that were submitted by prosecution counsel during the prosecution of the '976 patent.  Upon information and belief, each of the additional prior art references submitted by prosecution counsel is material at least because they were cited by prosecution counsel during the prosecution of the '976 patent on the basis of being material to patentability.  Upon information and belief, Troy Lorenson intentionally did not disclose these additional material prior art references in the prosecution of one or more of the '584 patent, the '920 patent, the '265 patent, and the '337 patent

in violation of 37 C.F.R. § 1.56.  Due to the materiality of the prior art references cited by the Examiner and by prosecution counsel during the prosecution of the '976 patent and Troy Lorenson's intentional decision to not disclose these material prior art references in the prosecution of one or more of the '584 patent, the '920 patent, the '265 patent, and the '337 patent, the '584 patent, the '920 patent, the '265 patent, and the '337 patent are invalid and unenforceable due to inequitable conduct.

149.    With respect to at least the '584 patent, there are eight prior art references that were cited by the Examiner during the prosecution of the '584 patent that were not subsequently cited during the prosecution of one or more of the '976 patent, the '920 patent, the '265 patent, and the '337 patent.  Upon information and belief, these eight prior art references are material at least because they were cited by the Examiner during prosecution of the '584 patent.  Upon information and belief, Troy Lorenson, by virtue of his participation in the prosecution of the '584 patent, had knowledge of these eight material prior art references and intentionally did not disclose these eight material prior art references in one or more of '976 patent, the '920 patent, the '265 patent, and the '337 patent in violation of 37 C.F.R. § 1.56.  Upon information and belief, Troy Lorenson had knowledge of additional prior art references that were submitted by prosecution counsel during the prosecution of the '584 patent.  Upon information and belief, each of the additional prior art references submitted by prosecution counsel is material at least because they were cited by prosecution counsel during the prosecution of the '584 patent as being material to patentability.  Upon information and belief, Troy Lorenson intentionally did not disclose these additional material prior art references in the prosecution of one or more of the '920 patent, the '265 patent, and the '337 patent in violation of 37 C.F.R. § 1.56.  Due to the materiality of the prior art references cited by the Examiner and by prosecution counsel during the prosecution of the

'584 patent and Troy Lorenson's intentional decision to not disclose these material prior art references in the prosecution of one or more of the '920 patent, the '265 patent, and the '337 patent, the '920 patent, the '265 patent, and the '337 patent are invalid and unenforceable due to inequitable conduct.

150.    With respect to at least the '920 patent, there are five prior art references that were cited by the Examiner during the prosecution of the '920 patent that were not subsequently cited during the prosecution of one or more of the '265 patent and the '337 patent.  Upon information and belief, these five prior art references are material at least because they were cited by the Examiner during prosecution of the '920 patent.  Upon information and belief, Troy Lorenson, by virtue of his participation in the prosecution of the '920 patent, had knowledge of these five material prior art references and intentionally did not disclose these five material prior art references in the prosecution of one or more of the '265 patent and the '337 patent in violation of 37 C.F.R. § 1.56.  Upon information and belief, Troy Lorenson had knowledge of additional prior art references that were submitted by prosecution counsel during the prosecution of the '920 patent.  Upon information and belief, each of the additional prior art references submitted by prosecution counsel is material at least because they were cited by prosecution counsel during the prosecution of the '920 patent as being material to patentability.  Upon information and belief, Troy Lorenson intentionally did not disclose these additional material prior art references in the prosecution of one or more of the '265 patent and the '337 patent in violation of 37 C.F.R. § 1.56. Due to the materiality of the prior art references cited by the Examiner and by prosecution counsel during the prosecution of the '920 patent and Troy Lorenson's intentional decision to not disclose these material prior art references in the prosecution of one or more of the '265 patent and the

'337 patent, the '265 patent and the '337 patent are invalid and unenforceable due to inequitable conduct.

## RESERVATION OF RIGHTS

151.    In asserting these affirmative defenses, DWS has not knowingly or intentionally waived any applicable defenses.  DWS reserves the right to assert and rely upon any other applicable defenses that may become available or apparent during the course of this action.  DWS reserves the right to amend or to seek to amend its answer or affirmative defenses.

## COUNTERCLAIMS

152.    Counterclaim-Plaintiff Downhole Well Solutions, LLC ("Counterclaim-Plaintiff" or "DWS"), by way of counterclaims against Counterclaim-Defendants Impulse Downhole Solutions Ltd. ("Impulse Solutions") and Impulse Downhole Tools USA Ltd. ("Impulse Tools") (Impulse Solutions and Impulse Tools collectively, "Counterclaim-Defendants"), alleges and states:

## PARTIES

153.    Counterclaim-Plaintiff Downhole Well Solutions, LLC is a limited liability company organized and existing under the laws of the State of Texas.  DWS maintains an office at 18300 Strack Drive, Suite 900, Spring, Texas 77379.

154.    Upon information and belief, Counterclaim-Defendant Impulse Downhole Solutions Ltd. is a company organized and existing under the laws of the Province of Alberta, Canada, having a place of business at 5120 67th Avenue, Edmonton, AB T6B 3N9.

155.    Upon information and belief, Counterclaim-Defendant Impulse Downhole Solutions Ltd. is a company organized and existing under the laws of the Province of Alberta, Canada, having a place of business at 5120 67th Avenue, Edmonton, AB T6B 3N9.

## JURISDICTION AND VENUE

156.    These Counterclaims arise under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., for declaratory judgments that the patents-in-suit are not infringed by DWS and are invalid.

157.    A valid and justiciable controversy regarding the patents-in-suit has arisen because Counterclaim-Defendants have asserted infringement of the patents-in-suit by DWS and DWS denies these assertions.    Therefore, this Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

158.    This Court has personal jurisdiction over Counterclaim-Defendants and venue is proper because Counterclaim-Defendants have voluntarily appears and consented to this venue by filing their alleged claims for patent infringement here.    Thus, Counterclaim-Defendants have availed themselves of this Court's jurisdiction by filing their Complaint, and are subject to personal jurisdiction and venue pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400 (b) in this Court.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '584 PATENT

159.    DWS incorporates Counterclaim Paragraphs 152–158 as if fully set forth herein.

160.    Impulse has accused DWS's downhole oscillation tools, including the PowerGLIDE and PowerGLIDE OD, any reasonably similar tools, the components thereof, and any related products or services (collectively referred to herein as the "Accused Products") of infringing one or more claims of U.S. Patent No. 9,765,584 ("the '584 patent").

161.    The Accused Products do not infringe the '584 patent.    By way of example, and not by limitation, the Accused products do not infringe the '584 patent at least because (i) the Accused Products do not include a flow head that is driven in a rotational motion by a rotor around a central axis of the flow head, (ii) the Accused Products do not create a fluid pressure that varies in a cyclic,

polyrhythmic pattern, and (iii) the Accused Products do not include a flow head with a plurality of ports of different sizes and a flow restrictor with a plurality of ports of different sizes.

162.    Absent a declaration that DWS does not infringe the '584 patent, Counterclaim-Defendants will continue to wrongfully assert the '584 patent against DWS and therefore cause DWS irreparable harm and injury.

163.    DWS requests declaratory judgment from the Court that DWS does not infringe and claim of the '584 patent, directly or indirectly, or literally or under the doctrine of equivalents.

164.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## SECOND COUNTERCLAIM

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '976 PATENT

165.    DWS incorporates Counterclaim Paragraphs 152–164 as if fully set forth herein.

166.    Impulse has accused DWS's downhole oscillation tools, including the PowerGLIDE and PowerGLIDE OD, any reasonably similar tools, the components thereof, and any related products or services (collectively referred to herein as the "Accused Products") of infringing U.S. Patent No. 9,637,976 ("the '976 patent").  The Accused Products do not infringe the '976 patent.  By way of example, and not by limitation, the Accused products do not infringe the '976 patent at least because (i) the Accused Products do not include a flow head with a plurality of ports that enter into and out of alignment with a plurality of flow ports of the flow restrictor in an irregular pattern, (ii) the Accused Products do not include a flow head with a plurality of ports of different sizes, and (iii) the Accused Products do not include a flow restrictor with a plurality of ports of different sizes.

167.    Absent a declaration that DWS does not infringe the '976 patent, Counterclaim-Defendants will continue to wrongfully assert the '976 patent against DWS and therefore cause DWS irreparable harm and injury.

168.    DWS requests declaratory judgment from the Court that DWS does not infringe and claim of the '676 patent, directly or indirectly, or literally or under the doctrine of equivalents.

169.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

### THIRD COUNTERCLAIM

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '337 PATENT

170.    DWS incorporates Counterclaim Paragraphs 152–169 as if fully set forth herein.

171.    Impulse has accused DWS's downhole oscillation tools, including the PowerGLIDE and PowerGLIDE OD, any reasonably similar tools, the components thereof, and any related products or services (collectively referred to herein as the "Accused Products") of infringing U.S. Patent No. 11,268,337 ("the '337 patent"). The Accused Products do not infringe the '337 patent. By way of example, and not by limitation, the Accused products do not infringe the '337 patent at least because (i) the Accused Products are not activatable by blocking fluid flow to a central passage defined by central bores formed through a rotary component, a stationary component, and a rotor, and (ii) the Accused Products do not have a central passage that permits drilling fluid to flow therethrough.

172.    Absent a declaration that DWS does not infringe the '337 patent, Counterclaim-Defendants will continue to wrongfully assert the '337 patent against DWS and therefore cause DWS irreparable harm and injury.

173.    DWS requests declaratory judgment from the Court that DWS does not infringe and claim of the '337 patent, directly or indirectly, or literally or under the doctrine of equivalents.

174.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## FOURTH COUNTERCLAIM

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '265 PATENT

175.    DWS incorporates Counterclaim Paragraphs 152–174 as if fully set forth herein.

176.    Impulse has accused DWS's downhole oscillation tools, including the PowerGLIDE and PowerGLIDE OD, any reasonably similar tools, the components thereof, and any related products or services (collectively referred to herein as the "Accused Products") of infringing U.S. Patent No. 10,648,265 ("the '265 patent"). The Accused Products do not infringe the '265 patent. By way of example, and not by limitation, the Accused products do not infringe the '265 patent at least because (i) the Accused Products do not have a central passage that permits fluid to flow from above a second/further friction reduction tool to below the second/further friction reduction tool, (ii) the Accused Products are not activatable by blocking a flow of drilling fluid through a central passage of the Accused Products, (iii) wireline tools are not extended through a central passage of the Accused Products, (iv) the Accused Products do not include a first friction reduction tool having a central passage that is smaller than a central passage of a second/further friction reduction tool, and (v) the Accused Products are not operated so that a projectile is passed through a second/further friction reduction tool to activate a first friction reduction tool.

177.    Absent a declaration that DWS does not infringe the '265 patent, Counterclaim-Defendants will continue to wrongfully assert the '265 patent against DWS and therefore cause DWS irreparable harm and injury.

178.    DWS requests declaratory judgment from the Court that DWS does not infringe and claim of the '265 patent, directly or indirectly, or literally or under the doctrine of equivalents.

179.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## FIFTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '920 PATENT

180.    DWS incorporates Counterclaim Paragraphs 152–179 as if fully set forth herein.

181.    Impulse has accused DWS's downhole oscillation tools, including the PowerGLIDE and PowerGLIDE OD, any reasonably similar tools, the components thereof, and any related products or services (collectively referred to herein as the "Accused Products") of infringing U.S. Patent No. 10,633,920 ("the '920 patent"). The Accused Products do not infringe the '920 patent. By way of example, and not by limitation, the Accused products do not infringe the '920 patent at least because (i) the Accused Products do not include a catch component, (ii) the Accused Products do not include a catch component with at least one aperture permitting fluid flow from an interior of a receiving end of the catch component to an exterior of the catch component, and (iii) the Accused Products do not use a blocking implement that includes a fracture implement to fragment the blocking implement.

182.    Absent a declaration that DWS does not infringe the '920 patent, Counterclaim-Defendants will continue to wrongfully assert the '920 patent against DWS and therefore cause DWS irreparable harm and injury.

183.    DWS requests declaratory judgment from the Court that DWS does not infringe and claim of the '920 patent, directly or indirectly, or literally or under the doctrine of equivalents.

184.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## SIXTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '584 PATENT

185.    DWS incorporates Counterclaim Paragraphs 152–184 as if fully set forth herein.

186.    The claims of the '584 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, and 112.

187.    For example, claim 1 of the '584 patent is invalid under 35 U.S.C. § 102(a)(1)in view of U.S. Published Patent Application No. US 2009/0183919 to Hall, et al. ("Hall"), attached hereto as Exhibit 1.  Hall published on July 23, 2009, which is before the effective filing date of the '584 patent.  For example, Hall discloses:

a.    "A downhole tool assembly," (Ex. 1 at 1 (referring to a "downhole percussive tool"), Fig. 2);

b.    "a motor," (*id.* ¶ 0013 (disclosing a suitable "driving mechanism" that "may be a turbine, a motor, or another suitable means known in the art"));

c.    "a flow head comprising a plurality of ports permitting fluid communication therethrough and arranged around a central axis of the flow head, the flow head being coupled to a rotor of the motor to be driven thereby in rotational motion around the central axis," (*id.* ¶ 0007 (referring to first and second discs axially aligned such that as "the discs rotate relative to one another at least one port formed in the first disc aligns with another port in the second disc" and "[f]luid passed through the ports is adapted to displace an element in mechanical communication with the jack element"));

d.    "a flow restrictor in fluid communication with the flow head, the flow restrictor comprising a plurality of ports permitting fluid communication therethrough, the flow restrictor being stationary with respect to the rotational motion of the flow head," (*id.* (same)); and

33

e.    "wherein rotation of the flow head with respect to the flow restrictor causes one or more of the plurality of ports of the flow head to enter into and out of alignment with one or more of the plurality of ports of the flow restrictor such that fluid pressure resulting from fluid flow through the ports of the flow head and the flow restrictor is constrained to a cyclic, polyrhythmic pattern." (*Id.* (same); *see also id.* ¶¶ 0013–0015).

188.    Absent a declaration that the claims of the '584 patent are invalid, Counterclaim-Defendants will continue to wrongfully assert the '584 patent against DWS, and thereby cause irreparable harm and injury.

189.    DWS requests declaratory judgment from the Court that the claims of the '584 patent are invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

190.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## SEVENTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '976 PATENT

191.    DWS incorporates Counterclaim Paragraphs 152–190 as if fully set forth herein.

192.    The claims of the '976 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, and 112.

193.    For example, claim 1 of the '976 patent is invalid under 35 U.S.C. § 102(a)(1) in view of U.S. Patent No. 9,004,194 to Eddison ("Eddison"), attached hereto as Exhibit 2.  On November 10, 2010, the application that would issue as Eddison was filed under the Patent Cooperation Treaty.  On November 8, 2012, the corresponding U.S. Patent Application published as U.S. Published Patent Application No. US 2012/0279724 A1.  Eddison issued on April 14,

2015.  Eddison was disclosed during the prosecution of the '584 patent and before the effective filing date of the '976 patent.  For example, Eddison discloses:

a.  A "drill string,"(Ex. 2 at Abstract (referring to "A method of translating a member through a bore involving moving fluid through a tubular member such as a drill string, and generating impulses on the member by varying the passage of fluid through the member using a valve which opens at a first rate and closes at a different second rate to urge the member to advance in a selected direction."));

b.  "an eccentrically-driven rotor," (*id.* at 2 (referring to "The valve may include a rotating element. The element may be configured to be rotated at a substantially constant or steady speed. In this case, different opening and closing rates may be achieved by the form of the element or other elements which cooperate with the rotating element. Alternatively, or in addition, the element may be rotated at varying speed, for example by incorporating a backlash or lost motion mechanism or arrangement, or by incorporating appropriate gearing or an eccentric mechanism."));

c.  "flow head," (*id.* at 1 (referring to "impulses may be generated by interrupting or varying the passage of the fluid through the member. This may be achieved by the movement of a flow barrier mounted in the member, by varying the form or extent of a flow restriction, or by carrying solid materials in the fluid which temporarily interrupt or slow the passage of fluid through a restriction. A valve may be utilized to interrupt the flow of fluid."));

d.  "flow restrictor," (*id.*); and

e.  "a plurality of ports permitting fluid communication," (*id.* at 6 referring to "As the rotor 28 rotates it oscillates from side-to-side and this movement is transferred directly to the valve plate 30 to provide a cyclic variation in the flow area defined by the flow ports 34, 36.").

194.  Absent a declaration that the claims of the '976 patent are invalid, Counterclaim-Defendants will continue to wrongfully assert the '976 patent against DWS, and thereby cause irreparable harm and injury.

195.  DWS requests declaratory judgment from the Court that the claims of the 976 patent are invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

196.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## EIGHTH COUNTERCLAIM

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '337 PATENT

197.    DWS incorporates Counterclaim Paragraphs 152–196 as if fully set forth herein.

198.    The claims of the '337 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, and 112.

199.    For example, claim 1 of the '337 patent is invalid under 35 U.S.C. § 102(a)(1) in view of U.S. Published Patent Application No. US 2009/0183919 to Hall, et al. ("Hall"), attached hereto as Exhibit 1.  Hall published on July 23, 2009, which is before the effective filing date of the '584 patent.  For example, Hall discloses:

a.    "A downhole tool assembly," (Ex. 1 at 1 (referring to a "downhole percussive tool"), Fig. 2);

b.    "a motor," (*id.* ¶ 0013 (disclosing a suitable "driving mechanism" that "may be a turbine, a motor, or another suitable means known in the art"));

c.    "a flow head comprising a plurality of ports permitting fluid communication therethrough and arranged around a central axis of the flow head, the flow head being coupled to a rotor of the motor to be driven thereby in rotational motion around the central axis," (*id.* ¶ 0007 (referring to first and second discs axially aligned such that as "the discs rotate relative to one another at least one port formed in the first disc aligns with another port in the second disc" and "[f]luid passed through the ports is adapted to displace an element in mechanical communication with the jack element"));

d.    "a flow restrictor in fluid communication with the flow head, the flow restrictor comprising a plurality of ports permitting fluid communication therethrough, the flow restrictor being stationary with respect to the rotational motion of the flow head," (*id.* (same)); and

e.    "wherein rotation of the flow head with respect to the flow restrictor causes one or more of the plurality of ports of the flow head to enter into and out of alignment with one or more of the plurality of ports of the flow restrictor such that fluid

pressure resulting from fluid flow through the ports of the flow head and the flow restrictor is constrained to a cyclic, polyrhythmic pattern." (*Id.* (same); *see also id.* ¶¶ 0013–0015).

200.    For example, claim 1 of the '337 patent is invalid under 35 U.S.C. § 102(a)(1) in view of International Publication No. WO2014081417 to Gosney ("Gosney"), attached hereto as Exhibit 3.  Gosney published on May 30, 2014, which is before the effective filing date of the '337 patent.  For example, Gosney discloses:

   a.    "[a] friction reduction assemply," (Ex. 3 ¶ 0034 (referring to "a down hole tool"));

   b.    "a motor comprising a rotor," (*id.* ¶ 0011 (disclosing a motor with an eccentrically moving rotor));

   c.    "a variable choke assembly having a rotary component and a stationary component," (*id.* ¶ 0013 (disclosing an assembly that uses plates that periodically align to create pressure fluctuations that vibrate the drillstring));

   d.    "each of the rotary component and stationary component being provided with passages that enter into and out of alignment when the rotary component rotates with respect to the stationary component, the rotary component being drivable by the rotor connected to the rotary component," (*id.* (same));

   e.    "the rotary component, stationary component, and rotor each comprising a central bore defining a central passage permitting drilling fluid flow through the assembly;" (*id.* (same)); and

   f.    "the assembly being activatable when drilling fluid flow through the central passage is blocked with a projectile to divert the drilling fluid flow through the motor to thereby activate the rotor and drive the rotary component, wherein at least some drilling fluid enters the passages of the rotary and stationary components as the rotary component rotates to thereby produce fluid pressure pulses." (*id.* ¶ 0029 (disclosing a ball drop)).

201.    Absent a declaration that the claims of the '584 patent are invalid, Counterclaim-Defendants will continue to wrongfully assert the '584 patent against DWS, and thereby cause irreparable harm and injury.

202.    DWS requests declaratory judgment from the Court that the claims of the 337 patent are invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

203.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## NINTH COUNTERCLAIM

### DECLARATORY JUDGMENT OF INVALIDITY OF THE '265 PATENT

204.    DWS incorporates Counterclaim Paragraphs 152–203 as if fully set forth herein.

205.    The claims of the '265 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, and 112.

206.    For example, claim 1 of the '265 patent is invalid under 35 U.S.C. § 102(a)(1) in view of U.S. Patent Application Publication No. US 2009/0107723 A1 to Kusko ("Kusko"), attached hereto as Exhibit 4.  Kusko published on April 30, 2009 and issued as U.S. Patent No. 7,958,952 on June 14, 2011, which is before the effective filing date of the '265 patent.  For example, Kusko discloses:

a.    A "drilling method,"(Ex. 4 ¶ 0020 (referring to "U.S. Pat. No. 6,588,518; to Eddison, Alan Martyn; and assigned to Andergauge Limited, describes a downhole drilling method comprising producing pressure pulses in drilling fluid using measurement-while-drilling (MWD) apparatus in a drill string having a drill bit and allowing the pressure pulses to act upon a pressure responsive device to create an impulse force on a portion of the drill string. The impulse force is utilized to provide a hammer drilling effect at the drill bit."));

b.    "fluid pressure pulses," (*id.*);

c.    "friction reduction tool," (*id.* ¶ 0058 (referring to an embodiment where pulsing drilling device (PDD) "valve(s) opens and closes, also dislodges the drilling cuttings all along the drill string and in addition, reduction of friction is accomplished by same axial movement of the drill string."));

d.      "drilling string," (*id.* ¶ 0072 (referring to "FIG. 1 shows a cross section schematic of drilling string."));

e.      "bottom hole assembly," (*id.* ¶ 0011 (referring to "axial vibration on the bottom hole assembly (BHA)"));

f.      "rotary component," (*id.* ¶ 0022 (referring to "a rotary ring rotatably supported on the tong frame and having a ring open throat"));

g.      "motor," (*id.* ¶ 0024  (referring to "A fluid actuated positive displacement motor operatively associated with the valve drives the valve member and a pressure responsive device which expands or retracts in response to the varying fluid pressure created by the varying fluid flow and the expansion or retraction providing a percussive effect.")); and

h.      "central passage," (*id.* ¶ 0027 (referring to "The body defines a central passageway extending therethrough from the top to the bottom in an axial direction so that the body has a side wall and a central passageway defining an inlet aperture at the top of the body, an exit aperture at the bottom of the body and a cylindrical portion. The body also defines a side passageway extending through the side wall intermediate the top and bottom of the body."));

207.    Absent a declaration that the claims of the '265 patent are invalid, Counterclaim-Defendants will continue to wrongfully assert the '265 patent against DWS, and thereby cause irreparable harm and injury.

208.    DWS requests declaratory judgment from the Court that the claims of the 265 patent are invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

209.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## **TENTH COUNTERCLAIM**

## **DECLARATORY JUDGMENT OF INVALIDITY OF THE '920 PATENT**

210.    DWS incorporates Counterclaim Paragraphs 152–209 as if fully set forth herein.

211.    The claims of the '920 patent are invalid under one or more provisions of Title 35 of the United States Code, including, but not limited to, §§ 101, 102, 103, and 112.

212.    For example, claim 1 of the '920 patent is invalid under 35 U.S.C. § 102(a)(1)in view of U.S. Patent No. 6,866,104 to Stoesz, et al. ("Stoesz"), attached hereto as Exhibit 5.  Stoesz published on September 11, 2003, which is before the effective filing date of the '920 patent.  For example, Stoesz discloses:

    a.    "A downhole assembly for use in a drilling string," (Ex. 5 Col. 5, ln 29-52 (discussing a drop in dart activated vibration tool));

    b.    "a motor assembly comprising a stator and a rotor assembly," (*id.* at Abstract and Col. 5, ln 29-52 (discussing a drop in dart activated vibration tool));

    c.    "a rotor body having a fluid passage extending between an inlet and an outlet, the fluid passage extending through at least part of the length of the rotor;" (*id.* (same));

    d.    "a catch component provided on the rotor body, the catch component comprising a receiving end and an interior seat for receiving and retaining a blocking implement, and a fluid passage permitting flow of drilling fluid entering the receiving end to the fluid passage of the rotor body when no blocking implement is retained in the rotor assembly," (*id.* (same)); and

    e.    "the receiving end permitting flow around the catch component and into the motor to thereby activate the motor when the blocking implement is retained in the rotor assembly, wherein the receiving end is substantially funnel-shaped and comprises at least one aperture permitting drilling fluid flow from an interior of the receiving end to an exterior of the catch component." (*id.* Col. 5, ln. 9-28)).

213.    Absent a declaration that the claims of the '920 patent are invalid, Counterclaim-Defendants will continue to wrongfully assert the '920 patent against DWS, and thereby cause irreparable harm and injury.

214.    DWS requests declaratory judgment from the Court that the claims of the '920 patent are invalid for failing to satisfy one or more of the conditions of patentability under 35 U.S.C. §§ 101, 102, 103, and/or 112.

215.    Upon information and belief, Counterclaim-Defendants' conduct presents an exceptional case such that DWS is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff DWS prays for judgment as follows:

A.    Declare that DWS has not directly or indirectly infringed, has not contributed to infringement by others of, and has not induced infringement by others of any valid and enforceable claim of any of the patents-in-suit;

B.    Declare that the claims of the patents-in-suit are invalid;

C.    Enter an order preliminarily and permanently enjoining Counterclaim-Defendants, their officers, directors, servants, managers, employees, agents, successors, and assignees, and all persons in active concert or participation with any of them, from directly or indirectly charging DWS with infringement of any claim of any of the patents-in-suit;

D.    A judgment that DWS Counterclaims are exceptional under 35 U.S.C. § 285 and awarding Counterclaim-Plaintiff DWS its costs and reasonable attorneys' fees; and

E.    A judgment awarding Counterclaim-Plaintiff DWS such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Under Federal Rule of Civil Procedure 38(b), DWS demands a jury trial on all issues triable by a jury.

Dated: October 2, 2023

Respectfully submitted,

/s/ Michael D. Karson
Michael D. Karson
  State Bar No. 24090198
  Attorney-in-Charge
WINSTEAD PC
2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: mkarson@winstead.com

*Attorney for Defendant Downhole Well*
*Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 2, 2023, I filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Michael D. Karson
Michael D. Karson