IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IMPULSE DOWNHOLE SOLUTIONS LTD., AND IMPULSE DOWNHOLE TOOLS USA LTD., | § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:23-cv-02954 |
| v. | § § | |
| DOWNHOLE WELL SOLUTIONS, LLC, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

**PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW**

1

I. **Introduction**

Impulse moves for judgment as a matter of law ("JMOL") on the following grounds: (1) DWS infringes claims 1 and 7 of the '976 patent, claims 1, 5, and 11 of the '584 patent, and claims 1, 4, 5, and 7 of the '337 patent; (2) DWS failed to prove that any asserted claim was invalid by clear and convincing evidence, including claims 1 and 7 of the '976 patent, claims 1 and 11 of the '584 patent, and claims 1, 4, 5, and 7 of the '337 patent; (3) DWS's damages base is improper because it excludes shock tools specifically recited by at least one claim in each asserted patent; (4) DWS failed to identify legally sufficient evidence to support a 1.84% royalty base; (5) DWS's damages theory is legally unsupportable because it relies on the costs of the components; and (6) DWS's damages theory is legally unsupportable because it hinges on the assumption that the only "patentable invention" is port geometry.

II. **Legal Standard**

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Thus, a jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 700. The jury's verdict must be supported by "substantial evidence" in support of each element of the claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The moving party is entitled to judgment as a matter of law "only if the evidence points so strongly and so overwhelmingly in favor of the [ ]moving party that no reasonable juror could return a contrary verdict." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (alteration in original, citation omitted).

**III.   Argument**

   **A. The Court Should Grant JMOL that Impulse Proved Infringement of Each Asserted Claim**

The Court should grant JMOL of infringement that DWS infringes claims 1 and 7 of the '976 patent, claims 1, 5, and 11 of the '584 patent, and claims 1, 4, 5, and 7 of the '337 patent.

As to the '976 patent claims, Impulse set forth ample evidence that DWS's accused products literally include each and every element of claims 1 and 7. *See* Trial Tr. (Day 4) at 145:13-157:21. DWS only disputed the "irregular pattern" element recited in claim 1. *See* Trial Tr. (Day 6) at 87:8-13. DWS's only argument was that port sizes having the same size and shape could not generate the claimed irregular pattern. *See* Trial Tr. Day 6 (3-2-2026) at 87:8-13; Trial Tr. Day 6 (3-2-2026) at 129:10-13. However, as DWS's expert admitted, the '976 patent claims do not recite ports having different sizes. *See* Trial Tr. Day 7 (3-3-2026) at 128:15-18. Instead, claim 1 recites that "rotation of the flow head with respect to the flow restrictor causes the plurality of ports of the flow head to enter into and out of alignment with the plurality of ports of the flow restrictor such that fluid flow through the ports of the flow head and the flow restrictor is varied in an irregular pattern, the irregular pattern comprising a pattern in which an orientation of the flow head at a defined position in a cycle of the rotor is different between consecutive

3

cycles of the rotor." DWS's expert admitted every accused product included this element. *See* Trial Tr. Day 7 (3-3-2026) at 126:22-127:4; 130:20-25; 131:15-18. Therefore, JMOL is appropriate.

As to the '584 patent claims, Impulse set forth ample evidence that DWS's accused products literally include each and every element of claims 1 and 11. *See* Trial Tr. (Day 4) at 157:22-163:22. DWS only disputed the "cyclic, polyrhythmic pattern" element recited in claim 1. *See* Trial Tr. (Day 6) at Trial Tr. Day 7 (3-3-2026) at 87:8-13, 126:22-127:4; 130:20-25; 131:15-18; Trial Tr. Day 6 (3-2-2026) at 129:10-13. DWS argued that port sizes having the same size and shape could not generate the claimed "cyclic, polyrhythmic pattern" element. However, as with the '976 patent, the '584 patent claims do not recite ports having different sizes. *See* '584 patent at claim 1; Trial Tr. Day 7 (3-3-2026) at 128:15-18.

Moreover, while DWS argued that Mr. Cuddapah's total flow area ("TFA") analysis disproved infringement, the claims also do not recite "total flow area." Instead, the claims recite that "rotation of the flow head with respect to the flow restrictor causes one or more of the plurality of ports of the flow head to enter into and out of alignment with one or more of the plurality of ports of the flow restrictor such that fluid pressure resulting from fluid flow through the ports of the flow head and the flow restrictor is constrained to a cyclic, polyrhythmic pattern.." *See* '584 Patent, Claim 1. Moreover, the evidence showed that Mr. Cuddapah's TFA analysis was unreliable. *See, e.g.*, Trial Tr. Day 6 (3-2-2026) at 179:19-180:2, 180:11-19, 181:19-23, 182:14-16. These TFA plots therefore cannot support DWS's position. Trial Tr. Day 7 (3-3-2026) at 132:9-17, 132:25-133:1. Therefore, JMOL is appropriate.

As to the '337 patent claims, Impulse set forth ample evidence that DWS's accused products literally include each and every element of claims 1, 4, 5, and 7. *See* Trial Tr. (Day 4)

4

at 163:23-169:23. DWS only disputed the "activate" element recited in claim 1. *See* Trial Tr. Day 6 (3-2-2026) at 156:10-19. However, this was contradicted by DWS's own evidence. *See* Trial Tr. Day 4 (2-26-2026) at 63:15-22; DTX-185. Further, the '337 patent specifically explains that rotation of the rotor occurs prior to activation, consistent with the claims. *See* '337 Patent at 14:65-15:12. Therefore, JMOL is appropriate.

### B. The Court Should Grant JMOL that DWS Failed to Prove Invalidity of Asserted Claim

The Court should grant JMOL of infringement that DWS failed to prove that any asserted claim was invalid by clear and convincing evidence, including claims 1 and 7 of the '976 patent, claims 1, 5, and 11 of the '584 patent, and claims 1, 4, 5, and 7 of the '337 patent.

As to the '976 patent, DWS's only argument was that Gust anticipated all asserted claims. However, DWS's expert admitted that Gust failed to disclose, among other things, "a flow head comprising a plurality of ports permitting fluid communication therethrough, the flow head being coupled to a rotor of the motor to be driven thereby in eccentric rotational motion." *See* Trial Tr. Day 7 (3-3-2026) at 167:22-168:4, 169:18-20; Trial Tr. Day 8 (3-4-2026) 161:15-162:5. Therefore, JMOL is appropriate.

As to the '584 patent, DWS's only argument was that Gust anticipated all asserted claims. However, DWS's expert admitted that modified the disclosures and figures of Gust to create an artificial (disclosed for the first time at trial) that was unsupported by any evidence from Gust. *See* Trial Tr. Day 7 (3-3-2026) at 126:3-9. Thus, DWS failed to prove that Gust discloses, among other things, "fluid pressure resulting from fluid flow through the ports of the flow head and the flow restrictor is constrained to a cyclic, polyrhythmic pattern." *See* Trial Tr. Day 8 (3-4-2026) 161:15-162:5. Therefore, JMOL is appropriate.

As to the '337 patent, DWS's only argument was that Gilleylen anticipated all asserted claims. However, DWS's expert admitted that modified the disclosures and figures of Gust to create a flawed and impossible variation of Gilleylen (disclosed for the first time at trial) that was unsupported by any evidence from Gilleylen. *See* Trial Tr. Day 7 (3-3-2026) at 180:10-181:2. Thus, DWS failed to prove that Gilleylen discloses, among other things, "each of the rotary component and stationary component being provided with passages that enter into and out of alignment when the rotary component rotates with respect to the stationary component, the rotary component being drivable by the rotor connected to the rotary component." *See* Trial Tr. Day 8 (3-4-2026) 214:19-215:19. Therefore, JMOL is appropriate.

### C. The Court Should Grant JMOL that DWS's Damages Base Is Legally Unsupportable

The Court should grant JMOL of infringement that DWS's damages base is improper because it excludes shock tools specifically recited by at least one claim in each asserted patent. Specifically, DWS improperly deducted revenue for the shock tools both within the PowerGLIDE and PowerGLIDE OD tool assembly and for the additional shock tools (and SlideKick) from his royalty base. Each of these PowerGLIDE tools is accused of infringement. When Impulse pointed this out in *Daubert* briefing, DWS failed to oppose this argument. Dkt. 215. Additionally, Mr. Dell's royalty base excludes the value of the claimed elements and because it does so, his report and opinions do not "carefully tie proof of damages to the claimed invention's footprint in the marketplace," as required by law. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). In addition, by excluding accused infringing components from his royalty base, Mr. Dell's opinion does not "award the claimant damages adequate to compensate for infringement . . . for the use made of the invention by infringer." 35 U.S.C. §284. Mr. Dell's royalty base should have included the value of *all* claimed elements, and

6

because it fails to do so, it should be excluded. *ThinkOptics, Inc. v. Nintendo of America, Inc.*, 2014 WL 2859578, *1-*2 (E.D. Tex. 2014) (granting motion to strike accused infringer's damages expert report for using too small of a royalty base where the claimed invention covered several components, where the expert opined that as only one of the components was allegedly the "inventive aspect" of the patent as the other components were in the prior art, only that component should be used in the royalty base, the court ruling that this theory was legally flawed since the claimed invention covered the combination of all the components and there is no "precedent permitting the complete removal of the value of claimed elements").

### D. The Court Should Grant JMOL that DWS's Damages Rate of 1.84% Based on the Rubicon Agreement Is Legally Unsupportable

The Court should grant JMOL of infringement that DWS failed to identify legally sufficient evidence to support a 1.84% royalty base. Mr. Dell's sole basis for this purported royalty is the Rubicon license, however, on its face, the document states "WHEREAS, the Parties agree that this Agreement is not representative of a reasonable royalty." In other words, both parties to that agreement (i.e., those in the best position to have the full context of the way the agreement was reached) attempted to sign post that this should not be used as a basis for a reasonable royalty. In no uncertain terms, neither Impulse nor Rubicon ever agreed that the lump sum payment ($700,000) would be representative of a reasonable royalty, much less any effective (3.68%) or implied per patent (1.84%) royalty rate, that Mr. Dell claims. Mr. Kinsella's testimony stated and explained the exact same.

Under Ecofactor, such testimony that contradicts all facts in the case is improper, unreliable, and JMOL should be granted. As the Federal Circuit has noted "[t]his is not a case where the relevant evidence can reasonably support competing conclusions" and instead, it was a

7

case where the evidence was contrary to the expert's proposed testimony" (Fed. Cir. 2025) (en banc). Ecotactor, 137 F.4th 1333, 1346.

### E. The Court Should Grant JMOL that DWS's Damages Rate of 1.5% Based on Bills of Materials Is Legally Unsupportable

The Court should grant JMOL of infringement that DWS's damages theory is legally unsupportable because it relies on the costs of the components. Mr. Dell started with the profits and then apportioned that number down to a variety of factors, exactly what longstanding Federal Circuit holds to be impermissible. *See* Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1346 (Fed. Cir. 2013) ("The infringer's selling price can be raised if necessary to accommodate a higher royalty rate, and indeed, requiring the infringer to do so may be the only way to adequately compensate the patentee for the use of its technology. Thus, the district court clearly erred by ensuring the ongoing royalty rate it awarded would "leave some room for profit" by Buyers at its current prices.").

Mr. Dell used costs of the components as a proxy for value in an approach that has been rejected by the Federal Circuit. *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1379 (Fed. Cir. 2022) ("Kingston argues that, because the undisputed evidence at trial shows that it paid just 35 cents in casing costs for the accused products, which is less than the 40-cent royalty Mr. Bergman proposed, Mr. Bergman necessarily failed to account for the value of the infringing features. We disagree. First, the costs to Kingston for the materials are not the same as the value of the patented feature, so Kingston's argument compares apples to oranges."). Thus, JMOL is appropriate.

8

### F. The Court Should Grant JMOL that DWS's Damages Theory Is Legally Unsupportable Because it Hinges on the Flawed Assumption that the Only Patentable Invention is "Port Geometry"

The Court should grant JMOL of infringement that DWS's damages theory is legally unsupportable because it hinges on the assumption that the only "patentable invention" is port geometry. Mr. Dell did not analyze how much new value is created by the novel combination beyond the value conferred by the allegedly conventional elements alone. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (even where a patent claim covers both conventional and unconventional elements, "it is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention," and rather "the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone).

Dr. Noynaert likewise did not evaluate the novel combination. He testified that certain aspects are "conventional" without any articulation of or acknowledgment of the patentable combination of the allegedly conventional and nonconventional elements, contrary to Federal Circuit precent. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338-41 (Fed. Cir. 2015).

## IV.  Conclusion

For the foregoing reasons, the Court should enter JMOL on the grounds identified above.

DATED: March 5, 2026

Respectfully Submitted,

By: */s/ John R. Keville*
John R. Keville
Attorney-in-Charge
Texas State Bar No. 00794085
Southern District of Texas ID No. 20922
JKeville@sheppardmullin.com

Michelle C. Replogle
Texas State Bar No. 24034648
Southern District of Texas ID No. 34908
MReplogle@sheppardmullin.com

Michael C. Krill
Texas State Bar No. 24097954
Southern District of Texas ID No. 2782784
MKrill@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
845 Texas Ave., 25th Floor
Houston, Texas 77002
Telephone: (713) 431-7100
Facsimile: (713) 431-7024

**COUNSEL FOR PLAINTIFFS IMPULSE DOWNHOLE SOLUTIONS LTD. AND IMPULSE DOWNHOLE TOOLS USA LTD.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above document has been served on March 5, 2026, to all counsel via the Court's CM/ECF system.

/s/ *John R. Keville*
John R. Keville
