IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IMPULSE DOWNHOLE SOLUTIONS LTD., AND IMPULSE DOWNHOLE TOOLS USA LTD., | |
| Plaintiff, | Civil Action No. 4:23-cv-02954 |
| v. | JURY TRIAL DEMANDED |
| DOWNHOLE WELL SOLUTIONS, LLC, | |
| Defendant. | |

**JURY CHARGE**

## I.       INTRODUCTION

Ladies and gentlemen, that concludes the evidentiary portion of the trial. All that's left is my instructions and closing arguments from counsel. You should have on your seats a copy of the jury charge, also known as the jury instructions. Those are for your use. You can take notes on them; underscore certain parts; take them home with you at the end of the trial. Tradition calls for me also to read these instructions to you.

I know that seems very duplicative, but I don't want to trifle with centuries of tradition. You can follow along in the text, if you wish, or not.

**Instruction No. 1: Consideration of Evidence**

Members of the jury, it is my duty and responsibility to instruct you on the law that you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is regardless of any opinion you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you must disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all the instructions about the law as a whole and regard each instruction in light of the others without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. Statements of counsel are not evidence. They're only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.

What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports their arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must follow the law as I instruct you.

You are required by law to decide the case in a fair and impartial and unbiased manner based entirely on the law and on the evidence presented to you in the courtroom. You may not be

influenced by passion, prejudice, or sympathy you might have for the plaintiff or defendant in arriving at your verdict.

**Instruction No. 2: Burdens of Proof**

As I instructed you at the beginning of trial, there are two standards of proof that you will apply in this case depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.

On other issues that I will identify for you, you must use a higher standard in deciding whether the fact has been proven by clear and convincing evidence, that is, you have been left with a clear conviction that the fact has been proven.

## II.    SUMMARY OF CONTENTIONS

**Instruction No. 3: Summary of Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Impulse seeks money damages from DWS for allegedly infringing the Patents by making, using, selling, and offering for sale, products and methods that Impulse argues are covered by the Asserted Claims of United States Patent Nos. 9,765,584, 9,637,976, and 11,268,337. The '584 and '976 Patents have been collectively referred to during this case as the "TLL Patents." The '337 Patent has been referred to as the "Activation Patent."

The products that Impulse alleges to infringe are DWS's PowerGLIDE and PowerGLIDE On-Demand (or "OD"). The specific Asserted Claims for each Patent and Accused Product are as follows:

- Claims 1 and 7 of the '976 Patent for both the PowerGLIDE and PowerGLIDE On-Demand;

- Claims 1, 4, and 11 of the '584 Patent for both the PowerGLIDE and PowerGLIDE On-Demand; and

- Claims 1, 4, 5 and 7 of the ' 337 Patent for PowerGLIDE On-Demand only.

DWS denies that it has infringed any Asserted Claims of the '584, '976, or '337 Patents and argues that all of the Asserted Claims are invalid based on anticipation. Thus, DWS contends that Impulse should not be awarded damages. DWS also denies that its alleged infringement was willful. In addition, DWS contends that Impulse was required to mark its PowerPulse® and ActiPulse® tools with the patent numbers but did not do so.

Your job is to decide each of these issues. If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Impulse to compensate it for the infringement. Any such award will need to take into account your determinations on whether Impulse has proven it complied with its marking obligations, which will be discussed further later.

You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take your decision on the willfulness issue into account later.

## III.     CLAIM CONSTRUCTION

**Instruction No. 4: Patent Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a patent covers, a patent claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a system, product, or process where each of the claim elements or limitations is present in that system, product, or process.

You will also need to understand what each claim covers in order to decide the infringement and invalidity issues in this case. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms, and I have provided to you my definitions of certain claim terms in your Juror Notebooks.

You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue, would be infringed by any table that includes a tabletop, legs, and glue, even if that table also contains other features or structures, such as leaves that would expand the size of the tabletop or wheels that would go on the ends of the legs.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. These issues are yours to decide.

**Instruction No. 5: Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. The following Asserted Claims are independent claims:

- '584 Patent claim 1

- '976 Patent claim 1

- '337 Patent claim 1

The remainder of the Asserted Claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s), including the independent claim, to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

## IV.    INFRINGEMENT

**Instruction No. 6: Infringement Generally**

I will now instruct you how to decide whether or not Impulse has proven that DWS has infringed the Asserted Claims.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from making, using, selling or offering to sell in the United States, or importing into the United States products covered by the patent claims during the life of the patent. If any person or entity that has engaged in any of those acts without the patent owner's permission, that person or entity is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims to the accused products and determine whether or not there is infringement. You should not compare the accused products with any specific example set out in the specification of the patent in reaching your decision on infringement. The only correct comparison is with the language of the claims themselves. You must reach your decision as to each assertion of infringement based on the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Although I, as the Court, and the parties may refer to the claims collectively, you must conduct your infringement analysis with respect to each of the claims in the patents. In other words, your infringement analysis must be conducted on a claim-by-claim basis.

In this case, Impulse has alleged that DWS directly infringes the Asserted Claims of the Patents.

In order to prove infringement, Impulse must prove that the requirements for infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved. The burden of proving infringement of a patent or any claim rests solely on Impulse as the party asserting infringement.

I will now explain infringement in more detail.

**Instruction No. 7: Direct Infringement by "Literal Infringement"**

In order to prove direct infringement of a patent claim by literal infringement, Impulse must prove by a preponderance of the evidence, i.e., that it is more likely than not, that DWS made, used, offered to sell, or sold, within the United States or imported into the United States, a product that meets all of the requirements of a claim of the Patents, and did so without the permission of Impulse during the time the Patents were in force. You must compare the accused product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.

A party can directly infringe a patent without knowing of the patent or without knowing that what the party is doing is patent infringement. Even if the party independently creates the accused product or method, it can still infringe.

You must determine, separately for each Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**Instruction No. 8: Willful Infringement**

In this case, Impulse argues that DWS willfully infringed the Asserted Patents. If you find that Impulse proved DWS has infringed any Asserted Claim, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether Impulse proved that it is more likely than not that DWS knew of Impulse's Asserted Patents and that the infringement by DWS was intentional.

You may not determine that the infringement was willful just because DWS was aware of a Patent and infringed it. Instead, you must also find that DWS deliberately infringed the Patent.

To determine whether DWS acted willfully, consider all facts and assess DWS's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

(1) Whether or not DWS acted consistently with the standards of behavior for its industry;

(2) Whether or not DWS intentionally copied a product of Impulse that is covered by the Patents;

(3) Whether or not DWS reasonably believed it did not infringe or that the patent was invalid;

(4) Whether or not DWS made a good-faith effort to avoid infringing the Patents, for example, whether DWS attempted to design around the Patents; and

(5) Whether or not DWS tried to cover up its infringement.

## V.    INVALIDITY

**Instruction No. 9: Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether or not DWS has proven that the Asserted Claims of the Patents are invalid. Patents are presumed valid. To prove that any claim of a patent is invalid, DWS must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid. The burden of proving invalidity of a patent or any claim rests solely on DWS as the party asserting invalidity.

**Instruction No. 10: Prior Art**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. Prior art is considered in determining whether the Asserted Claims of the Patents are anticipated or obvious. Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

DWS contends that WIPO Publication No. WO 2013/106938 ("Gust") is prior art to the '976 Patent and '584 Patent. In addition, DWS contends that U.S. Patent No. 9,598,923 ("Gilleylen") is prior art to the '337 Patent.

**Instruction No. 11: Anticipation**

In order for someone to be entitled to a patent, the invention must actually be "new." DWS contends that every Asserted Claim is invalid because the subject of those claims is not new. The law refers to this as "anticipated." DWS must convince you of this by clear and convincing evidence, i.e., that the evidence demonstrates that it is highly probable that claims are invalid.

Specifically, DWS contends that the Gust publication anticipates the Asserted Claims of the '976 Patent. DWS further contends that the Gust publication anticipates the Asserted Claims of the '584 Patent. Finally, DWS contends that the Gilleylen patent anticipates the Asserted Claims of the '337 Patent.

Anticipation must be determined on a claim-by-claim basis. DWS must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where DWS is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

## VI.    DAMAGES

**Instruction No. 12: Introduction**

If you find that DWS infringed any valid claim, you must then consider what amount of damages to award to Impulse. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that DWS has proven that all Asserted Claims are invalid, then Impulse is not entitled to any damages.

Any award of damages must be adequate to compensate Impulse for the infringement of a valid claim. They are not meant to punish DWS. Your damages award, if you reach this issue, should put Impulse in approximately the same financial position that it would have been in had the infringement not occurred.

Impulse has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Impulse establishes that it more likely than not has suffered. While Impulse is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Impulse may be entitled to recover. In this case, Impulse seeks lost convoyed sales as part of a reasonable royalty. A reasonable royalty is defined as the money amount Impulse and DWS would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Impulse is entitled to recover no less than a reasonable royalty for each act of infringement.

**Instruction No. 13: Reasonable Royalty**

If you find that an Asserted Claim is infringed and not invalid, Impulse is entitled to at least a reasonable royalty to compensate it for that infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

As a reminder, Impulse has the burden to establish the amount of damages by a preponderance of the evidence.

**Instruction No. 14: Reasonable Royalty – Relevant Factors**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by Impulse for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by a licensee for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     Impulse's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between Impulse and licensees, such as whether they are competitors in the same territory or in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other Impulse products or systems, the existing value of the invention to Impulse as a generator of sales of non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of systems made under the patents, their commercial success, and their current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Impulse, and the benefits to those who have used the invention.

(11)    The extent to which DWS has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as Impulse) and a licensee (such as DWS) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular system embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty DWS would have been willing to pay and that Impulse would have been willing to accept, acting as normally prudent business people.

**Instruction No. 15: Reasonable Royalty – Availability of Non-Infringing Alternatives**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing substitutes to the patented invention. The substitute must be a product that does not infringe the patent. An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period.

**Instruction No. 16: Reasonable Royalty – Apportionment**

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Impulse's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

**Instruction No. 17: Reasonable Royalty – Comparable Agreements**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

A hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

**Instruction No. 18: Date of Commencement of Damages – Products**

In determining the amount of damages, you must determine when the damages began.

Damages commence on the date that DWS has both infringed and been notified of the alleged infringement of the Patent. Notice can be constructive or actual.

Constructive notice is accomplished by marking. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. Impulse has the burden of establishing that it substantially complied with the marking requirement by a preponderance of the evidence. This means Impulse must show that substantially all of the products made, offered for sale, or sold under the '584 Patent have been marked. If you find that products sold under the '584 Patent have been properly marked with the patent number, then the marking and notice requirements do not affect the damages period and damages should be calculated as of the date you determine that the infringement began.

For the '337 Patent and '976 Patent—and the '584 Patent if you determine Impulse has not sufficiently marked—you must determine the date that DWS received actual notice of those patents and of the specific product alleged to infringe. Actual notice means that Impulse communicated to DWS a specific charge of infringement by a specific accused product. If the jury finds that the October 6, 2022, letter constituted actual notice, then the damages period begins on that date.

The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed—August 10, 2023.

## VII.     CONCLUSION

**Instruction No. 19: Duty to Deliberate; Notes**

It is now your duty to deliberate and consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberation, do not hesitate to re-examine your own opinions and change your mind if you are convinced you were wrong. But do not give up on your honest beliefs because other jurors think differently, or just to finish the case.

Remember at all times you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on your notes. Notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits I have admitted into evidence, your juror notebooks, and your notes. You will have a Verdict Form that tells you which specific questions you must answer in your deliberations. You must select a jury foreperson as a guide to guide you in your deliberations, to speak for you here in the courtroom, and to sign the Verdict Form when your deliberations are complete.

Your verdict must be unanimous. This means every juror must agree with all answers to the Verdict Form. After you have reached a unanimous verdict, the jury foreperson must fill out the answers to the written questions on the Verdict Form, sign it, and date it.

If you need to communicate with me during deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will either

respond in writing or meet with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

After you have concluded your service and I have discharged you from your jury duty, you are not required to talk with anyone about the case, but you may do so if you wish.

Signed at Houston, Texas on March 5, 2026.

Keith P. Ellison
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IMPULSE DOWNHOLE SOLUTIONS LTD.,
AND IMPULSE DOWNHOLE TOOLS USA
LTD.,

        Plaintiff,

    v.

DOWNHOLE WELL SOLUTIONS, LLC,

        Defendant.

Civil Action No. 4:23-cv-02954

JURY TRIAL DEMANDED

## **VERDICT FORM**

As used in this Verdict Form, the following terms have the following meanings:

| | |
|---|---|
| **Impulse** | Plaintiffs / Counterclaim Defendants Impulse Downhole Solutions Ltd. and Impulse Downhole Tools USA Ltd. |
| **DWS** | Defendant / Counterclaim Plaintiff Downhole Well Solutions, LLC |
| **'584 Patent** | United States Patent No. 9,765,584 |
| **'976 Patent** | United States Patent No. 9,637,976 |
| **'337 Patent** | United States Patent No. 11,268,337 |
| **TLL Patents** | Collectively, the '584 and '976 Patents |
| **Activation Patent** | The '337 Patent |
| **Asserted Patents** | Collectively, the '584, '976, and '337 Patents |
| **Asserted Claims** | Collectively, '584 Patent claims 1, 4, and 11; '976 Patent claims 1 and 7; and '337 Patent claims 1, 4, 5, and 7 |
| **Accused Products** | Collectively, the PowerGLIDE and PowerGLIDE On-Demand (or "PowerGLIDE OD") |

**IT IS VERY IMPORTANT THAT YOU FOLLOW THE**

**INSTRUCTIONS PROVIDED IN THIS VERDICT FORM**

**READ THEM CAREFULLY AND ENSURE THAT YOUR**

**VERDICT COMPLIES WITH THEM**

## I.    INFRINGEMENT

**QUESTION NO. 1:** Has Plaintiff Impulse proven by a preponderance of the evidence that Defendant DWS's **PowerGlide tool** infringes any of the following claims?

**Answer "Yes" or "No" for each Asserted Claim listed below.**

|  | **For Impulse** | **For DWS** |
|---|---|---|
| **'976 Patent** | | |
| Claim 1: | Yes (infringed) ✓ | No (not infringed) _____ |
| Claim 7: | Yes (infringed) ✓ | No (not infringed) _____ |
| **'584 Patent** | | |
| Claim 1: | Yes (infringed) ✓ | No (not infringed) _____ |
| Claim 4: | Yes (infringed) ✓ | No (not infringed) _____ |
| Claim 11: | Yes (infringed) ✓ | No (not infringed) _____ |

**QUESTION NO. 2:** Has Plaintiff Impulse proven by a preponderance of the evidence that Defendant DWS's **PowerGlide On Demand tool** infringes any of the following claims? **Answer "Yes" or "No" for each Asserted Claim listed below.**

|  | **For Impulse** | **For DWS** |
|---|---|---|
| **'976 Patent** | | |
| Claim 1: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 7: | Yes (infringed) __✓__ | No (not infringed) _____ |
| **'584 Patent** | | |
| Claim 1: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 4: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 11: | Yes (infringed) __✓__ | No (not infringed) _____ |
| **'337 Patent** | | |
| Claim 1: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 4: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 5: | Yes (infringed) __✓__ | No (not infringed) _____ |
| Claim 7: | Yes (infringed) __✓__ | No (not infringed) _____ |

## II.    WILLFUL INFRINGEMENT

**QUESTION NO 3:** Has Plaintiff Impulse proven by a preponderance of the evidence that Defendant DWS's infringement of any of the asserted patents listed below was willful?

**Answer "Yes" or "No" for each Asserted Claim listed below.**

|  | **For Impulse** | **For DWS** |
|---|---|---|
| '976 Patent: | Yes (willful)  ✓ | No (not willful) _____ |
| '584 Patent: | Yes (willful)  ✓ | No (not willful) _____ |
| '337 Patent: | Yes (willful)  ✓ | No (not willful) _____ |

## III.    INVALIDITY – ANTICIPATION

**QUESTION NO. 4:** Has Defendant DWS proven by clear and convincing evidence that any of the following Asserted Claims are invalid as anticipated?

**Answer "Yes" or "No" for each Asserted Claim listed below.**

|  | **For DWS** | **For Impulse** |
|---|---|---|
| **'976 Patent** | | |
| Claim 1: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 7: | Yes (invalid) _____ | No (not invalid) __✓__ |
| **'584 Patent** | | |
| Claim 1: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 4: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 11: | Yes (invalid) _____ | No (not invalid) __✓__ |
| **'337 Patent** | | |
| Claim 1: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 4: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 5: | Yes (invalid) _____ | No (not invalid) __✓__ |
| Claim 7: | Yes (invalid) _____ | No (not invalid) __✓__ |

## IV.  MARKING

**QUESTION NO. 5:** Has Plaintiff Impulse proven by a preponderance of the evidence that Plaintiff Impulse, and its licensees, marked substantially all of the products that they made, offered for sale, or sold in the United States, or imported into the United States, that were covered by the '584 Patent?

**Answer "Yes" or "No" below.**

|        **For Impulse**        |       **For DWS**       |
| Yes (marked substantially all) ✓ | No (did not mark substantially all) _____ |

**QUESTION NO. 6:** Has Plaintiff Impulse proven by a preponderance of the evidence that Plaintiff Impulse provided Defendant DWS with actual notice of infringement in a letter from Plaintiff Impulse on October 6, 2022, for any of the following Asserted Patents?

**Answer "Yes" or "No" for each asserted patent listed below.**

|                | **For Impulse**                  | **For DWS**                          |
| **'976 Patent:** | Yes (provided actual notice) ✓ | No (did not provide actual notice) _____ |
| **'584 Patent:** | Yes (provided actual notice) ✓ | No (did not provide actual notice) _____ |
| **'337 Patent:** | Yes (provided actual notice) ✓ | No (did not provide actual notice) _____ |

ONLY PROCEED TO THE NEXT QUESTION IF YOU FOUND AT LEAST ONE ASSERTED CLAIM BOTH INFRINGED AND VALID. THIS MEANS FOR THE SAME ASSERTED CLAIM, YOU MUST HAVE ANSWERED:

1.    "YES" TO INFRINGEMENT (IN QUESTION 1 OR 2); *AND*

2.    "NO" TO INVALIDITY (IN QUESTION 4).

IF YOU HAVE *NOT* FOUND ANY ASSERTED CLAIMS IN QUESTION BOTH INFRINGED AND VALID, THEN *DO NOT* ANSWER ANY FURTHER QUESTIONS. PROCEED TO THE LAST PAGE, HAVE YOUR JURY FOREPERSON SIGN AND DATE THIS VERDICT FORM, AND THEN DELIVER IT TO THE COURT SECURITY OFFICER.

## V. DAMAGES

**QUESTION NO. 7:** What amount, if any, has Plaintiff Impulse proven by a preponderance of the evidence that it is entitled to recover as a reasonable royalty for Defendant DWS's infringement of any valid Asserted Claim?

**For each Patent listed below for which you found infringement of a valid Asserted Claim, answer separately in dollars.**

**'976 Patent:**

$ _____ 0 _____

**'584 Patent:**

$ 45,006,380. 00/100 _____

**'337 Patent:**

$ 2,675,097. 00/100 _____

**ADD THE ABOVE AMOUNTS AND ENTER THAT SUM BELOW AS THE TOTAL AWARDED TO PLAINTIFF IMPULSE FOR INFRINGED AND VALID CLAIMS.**

**Total awarded:**

$ 47,681,477. 00/100 _____

-10-

## VI.    CONCLUSION

You have reached the end of the verdict form.  Review the completed form to ensure that it accurately reflects your **unanimous** determinations.  The Jury Foreperson should then sign and date the verdict form in the space below and notify the Court Security Officer that you have reached a verdict.  The Foreperson should retain possession of the verdict form and bring it to the courtroom with the jury.

Date: _March 5, 2026_



Foreperson