**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IMPULSE DOWNHOLE SOLUTIONS LTD and IMPULSE DOWNHOLE TOOLS USA LTD, | ) ) ) ) | Civil No. 4:23-cv-02954 |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| DOWNHOLE WELL SOLUTIONS, LLC, | ) ) | |
| Defendant. | ) | |

**DEFENDANT DOWNHOLE WELL SOLUTIONS, LLC'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

NATURE AND STAGE OF THE CASE.............................................................................. 1

STATEMENT OF THE ISSUES TO BE DECIDED........................................................... 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

    A.    The Jury's Verdict Renders Impulse's Motion Moot ............................................ 2

    B.    Impulse is Not Entitled to Judgment as a Matter of Law on Infringement............. 3

        1.    A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '976 Patent.............................. 3

        2.    A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '584 Patent.............................. 8

        3.    A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '337 Patent.............................. 9

    C.    Impulse is Not Entitled to Judgment as a Mater of Law on Invalidity ................. 10

        1.    A reasonable jury could find that Gust anticipates the asserted claims of the '976 and '584 Patents........................................................ 10

        2.    A reasonable jury could find that Gilleylen anticipates the asserted claims of the '337 Patent........................................................... 11

    D.    Impulse is Not Entitled to Judgment as a Matter of Law on Damages................. 12

        1.    DWS properly apportioned the value of the only allegedly inventive aspect of the Asserted Claims. .................................................. 12

        2.    DWS properly derived its royalty rate from the only comparable license in this case.................................................................................. 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

*Cases*

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)...................................................................................... 14

*Dominion Energy, Inc. v. Alstom Grid LLC*,
  725 F. App'x 980 (Fed. Cir. 2018) .................................................................................. 7

*EcoFactor, Inc. v. Google LLC*,
  137 F.4th 1333 (Fed. Cir. 2025) ................................................................................... 16

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
  879 F.3d 1332 (Fed. Cir. 2018)............................................................... 12, 13, 14, 15

*Jensen v. Radiologic Ctr., Inc.*,
  No. 8:24CV129, 2026 WL 710932 (D. Neb. Mar. 13, 2026)....................................... 2

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)....................................................................................... 12

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)................................................................................. 5, 14

*Maxell, Ltd. v. Samsung Elecs. Co.*,
  805 F. Supp. 3d 749 (E.D. Tex. 2025)......................................................................... 7

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ............................................................... 12, 14, 15

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..................................................................................... 5

*Provisur Techs., Inc. v. Weber, Inc.*,
  119 F.4th 948 (Fed. Cir. 2024) .................................................................................. 15

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000)......................................................................... 2, 6, 7, 9, 11, 12

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
  156 F.4th 1289 (Fed. Cir. 2025) ................................................................................ 13

*Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*,
  80 F.4th 607 (5th Cir. 2023) ........................................................................................ 2

*Summit 6, LLC v. Samsung Electronics Co.*,
  802 F.3d 1283 (Fed. Cir. 2015)................................................................................... 14

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
   No. 6:11-cv-455, 2014 WL 2859578 (E.D. Tex. June 21, 2014) ............................................. 15

*Virnetx, Inc. v. Cisco Sys. Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................. 15

## INTRODUCTION

DWS presented evidence from which reasonable jurors could find in its favor on each of Impulse's purported grounds for judgment as a matter of law ("JMOL"). As to non-infringement, the jury heard extensive evidence that the regular, symmetric ports of DWS's PowerGLIDE and PowerGLIDE On-Demand tools can *only* generate regular, rhythmic patterns of pressure pulses. Indeed, DWS has separately moved for judgment of *non*-infringement as a matter of law, because the only evidence Impulse presented of infringement was fatally flawed testing that no reasonable juror could credit. On invalidity, DWS presented legally sufficient evidence of the invalidity of each Asserted Claim. At best, Impulse points to contrary testimony from its expert, but weighing competing evidence is the *jury's* role, not the Court's. Impulse's damages arguments fare no better, rehashing the same arguments this Court rejected when it denied Impulse's *Daubert* motion against DWS's damages expert. The Court should deny Impulse's motion.

## NATURE AND STAGE OF THE CASE

Trial in this patent-infringement case began on February 23, 2026. The jury returned its verdict on March 5, 2026. Impulse filed its Rule 50(a) motion for judgment as a matter of law on March 5, 2026. Dkt. 388.

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should deny Impulse's motion as moot when the jury rendered a verdict in Impulse's favor for each issue on which Impulse moved for judgment as a matter of law.

2. Whether a reasonable jury could find that DWS's PowerGLIDE and PowerGLIDE On-Demand tools do not infringe the Asserted Claims when DWS presented evidence demonstrating that its PowerGLIDE and PowerGLIDE On-Demand tools fail to meet at least one element of each Asserted Claim.

3. Whether a reasonable jury could find that the Asserted Claims are invalid when DWS provided evidence demonstrating that prior art anticipates each of the Asserted Claims.

- 1 -

4.      Whether a reasonable jury could find that DWS provided legally sufficient evidence to support its damages model when DWS provided evidence that the Asserted Claims include numerous, indisputably conventional elements for which Impulse is not entitled a damages award, DWS's damages expert properly derived an implied royalty rate from the only comparable license in this case, and this Court considered and rejected Impulse's arguments when the Court denied Impulse's *Daubert* motion on the same grounds.

Review of the district court's decision on JMOL is *de novo*. *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 615 (5th Cir. 2023).

## LEGAL STANDARD

Judgment as a matter of law is appropriate only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

## ARGUMENT

### A.    The Jury's Verdict Renders Impulse's Motion Moot

While, as detailed further herein, Impulse's motion fails on the merits, it is also moot. "Because the Court reserved its ruling on Plaintiffs' Rule 50(a) motion, the jury's verdict in Plaintiffs' favor necessarily moots their Rule 50(a) motion." *E.g.*, *Jensen v. Radiologic Ctr., Inc.*, No. 8:24CV129, 2026 WL 710932, at *1 (D. Neb. Mar. 13, 2026) (citing FED. R. CIV. P. 50 advisory committee note to the 1991 amendment)). Thus, separate and apart from the significant merits-related failures of Impulse's motion, the Court should deny the motion as moot.

**B.      Impulse is Not Entitled to Judgment as a Matter of Law on Infringement**

     **1.      A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '976 Patent.**

The asserted claims of U.S. Patent No. 9,637,976 ("the '976 Patent") require that "***fluid flow*** through the ports of the flow head and the flow restrictor ***is varied in an irregular pattern***, the irregular pattern comprising a pattern in which an orientation of the flow head at a defined position in a cycle of the rotor is different between consecutive cycles of the rotor." PTX-002.0012 (emphases added).[1] Fluid flow is a function of the total flow area through a valve and the flow rate of the fluid. *E.g.*, Trial Tr. at 153:12–154:12 (Feb. 25, 2026); Trial Tr. at 183:8–184:15 (Feb. 26, 2026); Trial Tr. at 62:9–20 (Feb. 27, 2026). And fluid flow can be characterized by a pressure pattern—because when total flow area is high, pressure is low; and when total flow area is low, pressure is high. *E.g.*, Trial Tr. at 154:10–19 (Feb. 25, 2026); Trial Tr. at 184:8–25 (Feb. 26, 2026).

The record shows that every valve plate for both DWS's PowerGLIDE and PowerGLIDE On-Demand uses ***regular***, symmetric port geometry resulting in a ***regular***, rhythmic variation of total flow area (and thus, fluid flow/pressure). As further explained below, these ports of the same size, same shape, and same radial and angular disposition ***cannot*** create the claimed "irregular" pattern of fluid flow:

---

[1] The Court held that no construction is necessary for "irregular pattern" and the term carries its plain and ordinary meaning. Dkt. 79 at 7.

5.25" PowerGLIDE Rotary Valve Plate
(DX385.1 / DX172.1)[2]



5.25" PowerGLIDE Stationary Valve Plate
(DX388.1)[3]



5.25" PowerGLIDE OD Rotary Valve Plate
(DX169.1)[4]



5.25" PowerGLIDE OD Stationary Valve
Plate (DX390.1 / DX170.1)[5]



Consistent with the undisputed geometry, Impulse's technical expert, Dr. Harri Kytömaa, conceded at trial that the ports on DWS's tools are the same shape and size, at the same distance from the center, and evenly distributed 120 degrees apart. *See* Trial Tr. at 43:16–44:4 (Feb. 27, 2026); Trial Tr. at 26:18–27:5, 27:9–28:4 (Feb. 27, 2026) (5.25" PowerGLIDE); Trial Tr. at 32:7–33:5 (Feb. 27, 2026) (6.75" PowerGLIDE); Trial Tr. at 34:14–20, 35:21–36:11 (Feb. 27, 2026) (5.25" PowerGLIDE On-Demand); Trial Tr. at 38:9–14, 42:4–20, 43:20–44:10 (Feb. 27, 2026) (6.75" PowerGLIDE On-Demand).

---

[2] *See also* DX392.1 (6.75" PowerGLIDE Rotary Valve Plate).
[3] *See also* DX393.1 (6.75" PowerGLIDE Stationary Valve Plate).
[4] *See also* DX287.1 (6.75" PowerGLIDE On-Demand Valve Plate).
[5] *See also* DX288.1 (6.75" PowerGLIDE On-Demand Stationary Valve Plate).

The specification of the '976 Patent underscores that the claimed irregular pattern is a consequence of irregular port geometry:

> The resultant complex, polyrhythmic pattern may be considered to be arrhythmic within a given cycle of the rotor 150 in the stator 155, ***depending on the particular configuration of the ports (i.e., the number, positions, sizes, and cross-sectional profiles) in the flow head 190 and the*** insert 210 and/or ***flow restrictor 220***.

PTX-002.0012 at 7:1–6 (emphases added). Indeed, "the port configurations may be modified by changing the number, dimensions, and profiles of the ports," and by "appropriate selection" thereof, "the frequency of pressure spikes can be controlled and selected." PTX-002.0011 at 6:26–28, 35–36. Impulse asserts in response that "the '976 patent claims do not recite ports having different sizes." Dkt. 388 at 3. Such selective avoidance of the specification's teachings is curious considering Impulse's full-throated embrace of the passage in the specification of the '337 Patent allegedly describing a "low-energy state" of activation that is absent from any claim of the '337 Patent. *E.g.*, Trial Tr. at 96:21–99:8, 109:8–110:9 (Feb. 26, 2026). More fundamentally though, "claims must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). Here, the specification confirms that, as a matter of physics, DWS's tools ***cannot*** generate the claimed pattern of pressure pulses.

Indeed, whether the words "ports having different sizes" appear in the claims rather than the specification is irrelevant to the ultimate question of whether there exists sufficient record evidence from which reasonable jurors could conclude that DWS's tools do not infringe. As detailed herein, DWS presented evidence from which reasonable jurors could conclude that its tools do not generate an irregular pattern of fluid flow. Rather than grappling with the specific evidence DWS presented at trial, Impulse simply rehashes its infringement case. But the Court

must disregard evidence contrary to that which DWS presented so long as the jury is not "required to believe" it. *Reeves*, 530 U.S. at 131. Such is the case here.

Impulse incorrectly claims that Dr. Noynaert "admitted" DWS's tools satisfy the irregular pattern limitation of the '976 Patent. Dkt. 388 at 4 (citing Trial Tr. at 126:22–127:4 (Mar. 3, 2026)). *Not so*. In the very same line of questioning Impulse cites, its counsel asked Dr. Noynaert:

> Q.    Then it says: "The irregular pattern comprising a pattern in which an orientation of the flow head at a defined position in a cycle of the rotor is different between consecutive cycles of the rotor." Do you see that, sir?
> A.    I see that, yes.
> Q.    Do you agree that the PowerGLIDE tools have that pattern as described in the claim, don't you?
> A.    ***No, sir, I wouldn't***.

Trial Tr. at 127:14–22 (Mar. 3, 2026). It is true that the orientation of the rotary valve plate is different between consecutive cycles of the rotor. But that is a quality inherent in ***every*** tool with a multi-lobe positive displacement motor driving a rotary valve, as even Impulse's corporate representative acknowledged. Trial Tr. at 141:16–20 (Feb. 25, 2026). That second clause of the so-called "irregular pattern" limitation of the '976 Patent merely requires a multi-lobe positive displacement motor driving a rotary valve; it does not change what an "irregular pattern" in the fluid flow is.

Thus, the inquiry must focus on whether the Accused Products create an irregular pattern ***of fluid flow*** as claimed in the '976 Patent. On this issue, the only evidence Impulse presented at trial was Dr. Kytömaa's fatally flawed testing of tools he claimed were representative of the Accused Products. But as DWS described in its affirmative motion for judgment as a matter of law, Dr. Kytömaa's testing does not show what Impulse claims it shows—much less that the accused products, as used by DWS's customers, generate an irregular pattern ***of fluid flow***. Dkt. 380 at 6–7. Accordingly, Impulse has failed to present legally sufficient evidence of infringement. On the contrary, Impulse's fatally flawed evidence actually supports judgment as a

matter of law of *non*-infringement. *Id.*; *see also Maxell, Ltd. v. Samsung Elecs. Co.*, 805 F. Supp. 3d 749, 771 (E.D. Tex. 2025) (granting judgment as a matter of law on non-infringement, holding "[w]ithout [the plaintiff's technical expert's] conclusory testimony and product testing, [the plaintiff] has nothing to support the jury's verdict of infringement"); *see also Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980, 986 (Fed. Cir. 2018) (concluding no reasonable jury could find infringement where plaintiff's expert's testimony was "conclusory, unsupported, contrary to the evidence in the case, or not directed to the claim limitation at issue").

Despite having no burden to prove *non*-infringement, DWS presented evidence demonstrating the effect of the regular, rhythmic port geometry on the total flow area of the PowerGLIDE and PowerGLIDE On-Demand. Trial Tr. at 60:22–64:24 (Mar. 2, 2026). Mr. Cuddapah and Dr. Noynaert both testified at length that the regular, symmetric port geometry of the PowerGLIDE and PowerGLIDE On-Demand will *only* generate regular, rhythmic pressure patterns. Trial Tr. at 48:4–64:24, (Mar. 2, 2026); Trial Tr. at 36:25–39:17, 41:18–42:7, 55:1–57:3, 58:18–64:9 (Mar. 3, 2026). Impulse claimed for the first time at trial that the total flow area analysis DWS presented is "unreliable." Dkt. 388 at 4. Even if this were true—which it is not— the Court "may not make credibility determinations or weigh the evidence," as these are "jury functions, not those of a judge." *Reeves*, 530 U.S. at 150–151. A reasonable jury could readily credit the analysis DWS presented. Indeed, Dr. Noynaert's analysis of the total flow area of DWS's tools, the foundation of which was Mr. Cuddapah's spreadsheets and CAD drawings, was the *only* expert opinion in this case that went unchallenged under *Daubert*.

Joshua Sicilian—the only truly neutral witness in this case—agreed, confirming that generating an irregular pattern of pressure pulses requires an irregular or asymmetric port geometry. Trial Tr. at 214:15–220:10 (Feb. 27, 2026); Trial Tr. at 220:15–221:8 (Mar. 2, 2026).

Likewise, generating a regular, rhythmic pattern of pressure pulses is *only* possible using regular, symmetric ports:

> Q.    So my question is: Can the inventions in your '709 Patent be used to generate constant amplitude/constant wavelength pressure pulse patterns?
> A.    Yes, it's possible.
> Q.    How?
> A.    You simply make all of the smaller ports equally sized and space them apart equally.

*Id.* at 220:15–21 (Mar. 2, 2026).

On this record, reasonable jurors could find that Impulse failed to prove that DWS's tools satisfy the "irregular pattern" limitation present in every asserted claim of the '976 Patent. Accordingly, Impulse's motion for judgment as a matter of law must fail.

**2.    A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '584 Patent.**

Like the '976 Patent, each asserted claim of U.S. Patent No. 9,765,584 ("the '584 Patent") requires that "*fluid pressure resulting from fluid flow* through the ports of the flow head and the flow restrictor *is constrained to a cyclic, polyrhythmic pattern*." PTX-001.0020 (emphases added). The Court construed "a cyclic, polyrhythmic pattern" term as "a pattern of: two or more different rhythms within one revolution of the flow head wherein a rhythm refers to either varying amplitude or duration between pressure peaks." Dkt. 79 at 7.

Impulse's own theory again links the claimed pattern of pressure pulses to specific configurations of the ports in the rotary and stationary valve plates. *See* Trial Tr. 44:14–45:23, 48:18–50:4 (Feb. 27, 2026). Dr. Kytömaa himself admitted that the embodiments of the '584 Patent's embodiment depict ports of *differing* sizes/shapes, and that DWS's tools do not have those irregular port configurations. Trial Tr. at 196:22–198:19, 200:1–18, 202:1–16, 202:24–204:9, 204:23–205:7, 207:22–208:14 (Feb. 26, 2026); DX385.1, DX388.1 (5.25" PowerGLIDE rotary and stationary plates); DX169.1, DX390.1 (5.25" PowerGLIDE On-Demand rotary and

- 8 -

stationary plates); DX392.1, DX393.1 (6.75" PowerGLIDE rotary and stationary plates); DX287.1, DX288.1 (6.75" PowerGLIDE On-Demand rotary and stationary plates). Thus, when the ports are all the same size and shape and symmetrically arranged, a tool **cannot** produce the claimed cyclic, polyrhythmic pattern. Trial Tr. at 214:15–220:10 (Feb. 27, 2026); 48:4–64:24, 220:15–221:8 (Mar. 2, 2026); 36:25–39:17, 41:18–42:7, 55:1–57:3, 58:18–64:9 (Mar. 3, 2026).

The only contrary evidence Impulse presented—the Dyno-Flow testing—fails for the same reasons it fails with respect to the "irregular pattern" limitation of the '976 Patent. Dkt. 380 at 6–7. Moreover, as detailed above with respect to the '976 Patent, the Court must disregard that evidence when evaluating JMOL. *Reeves*, 530 U.S. at 131. A reasonable jury could conclude that Impulse failed to prove that DWS's tools satisfy the "cyclic, polyrhythmic pattern" limitation of the '584 Patent. Thus, Impulse's motion must fail.

### 3. A reasonable jury could find that Impulse failed to prove infringement of the asserted claims of the '337 Patent.

Each asserted claim of U.S. Patent No. 11,268,337 ("the '337 Patent") requires "the assembly [to be] activatable when drilling fluid flow through the central passage is blocked with a projectile to divert the drilling fluid flow through the motor ***to thereby activate the rotor and drive the rotary component***, . . . ***to thereby produce fluid pressure pulses***." PTX-003.0020 (emphasis added).[6] The ***only*** evidence in the record demonstrates that DWS's PowerGLIDE On-Demand tools produce pressure pulses ***before*** the ball is seated. *E.g.*, DTX-185.2. Thus, the projectile does not divert drilling fluid ***to thereby activate*** the rotor and does not ***thereby*** produce fluid pressure pulses. Indeed, Dr. Kytömaa admitted that, before the ball was dropped for the On-Demand tool test, the "rotor of the tool was rotating, and there was flow through the mud motor." Trial Tr. 40:1–

---

[6] The Court held that no construction is necessary for "activatable" and the term carries its plain and ordinary meaning. Dkt. No. 79 at 18.

20 (Feb. 27, 2026). Impulse presented no evidence to the contrary. Trial Tr. 40:22–41:17 (Feb. 27, 2026). On this record, a reasonable jury could conclude that Impulse failed to prove that DWS's PowerGLIDE On-Demand tools infringe the asserted claims of the '337 Patent. Accordingly, Impulse's motion must fail.

**C.    Impulse is Not Entitled to Judgment as a Mater of Law on Invalidity**

> **1.    A reasonable jury could find that Gust anticipates the asserted claims of the '976 and '584 Patents.**

DWS presented legally sufficient evidence from which a reasonable jury could conclude that Gust anticipates the asserted claims of the '976 and '584 Patents. Indeed, Dr. Noynaert walked the jury through each element of the asserted claims of the '976 and '584 Patents and demonstrated how Gust disclosed the claim elements. Trial Tr. at 80:12–102:24 (Mar. 3, 2026). Impulse's only quarrel as to the '976 Patent is with Dr. Noynaert's discussion of the flow head. But Dr. Noynaert expressly testified that Gust discloses the flow head of the '976 Patent:

> Q.    If we go to slide 57, is the flow head of Gust coupled to the rotor of the motor?
>
> A.    Yes, sir. So that's the last part of that claim element that I just read previously, so the flow head is coupled to the rotor of the motor and it's coupled together and then it is driven thereby in eccentric motion. And ***we know that an eccentric power section will then impart eccentric motion to that flow head*** and we see that here in this text where it says: "The drive assembly comprises the drive shaft having a first end coupled to the rotor of the power section, then the second end to the nozzle holder."

Trial Tr. at 86:5–15 (Mar. 3, 2026) (emphasis added). Creatively misquoting Dr. Noynaert's trial testimony, Impulse argues that Dr. Noynaert admitted Gust does not disclose the flow head of the '976 Patent. Dkt. 388 at 5 (citing Trial Tr. at 167:22–168:4, 169:18–20 (Mar. 3, 2026)). But as Dr. Noynaert expressly testified, the embodiment of Gust at issue was ***different*** than the embodiment Dr. Noynaert relied on for the '976 Patent. Trial Tr. at 168:3–4 (Mar. 3, 2026).

Impulse's only argument as to the '584 Patent—that Dr. Noynaert "modified" the figures of Gust to present his testimony—likewise fails. As an initial matter, Impulse's claim that the three-port configuration of Gust Dr. Noynaert presented to the jury was "disclosed for the first time at trial" is simply false. *Contra* Dkt. 388 at 5. As Dr. Noynaert testified extensively during his direct examination, Gust provides a tool designer significant freedom to configure the ports of the flow head and flow restrictor. Trial Tr. at 85:11–19, 87:13–23, 91:6–12, 96:20–97:1, 100:7–20 (Mar. 3, 2026). One such configuration is a three-port flow head, which, as Dr. Noynaert testified at trial, would generate the claimed cyclic, polyrhythmic pattern of pressure pulses. *Id.*

Impulse also repeatedly cites to Dr. Kytömaa's testimony disputing Dr. Noynaert's conclusions. But it is not the Court's role to weigh the evidence; that is the province of the jury. *Reeves*, 530 U.S. at 150–51. And the Court must disregard contrary evidence that the jury is not "required to believe." *Id.* Reasonable jurors could credit Dr. Noynaert's unequivocal testimony that Gust anticipates the asserted claims of the '976 and '584 Patents. Accordingly, Impulse is not entitled to judgment as a matter of law on invalidity.

**2.    A reasonable jury could find that Gilleylen anticipates the asserted claims of the '337 Patent.**

DWS likewise presented legally sufficient evidence from which a reasonable jury could conclude that Gilleylen anticipates the asserted claims of the '337 Patent. Dr. Noynaert walked the jury though the structure, components, and operation of the friction reduction tool disclosed by Gilleylen. Trial Tr. at 103:7–115:4 (Mar. 3, 2026). As part of that discussion, Dr. Noynaert demonstrated, consistent with his expert report, how the passages of Gilleylen's rotary and stationary component enter into and out of alignment with each other as the rotor drives the rotary component. *Id.* at 113:19–114:10 (Mar. 3, 2026). Once again, Impulse falsely claims that Dr. Noynaert "modified the disclosures of Gust [sic]" and disclosed a configuration of Gilleylen's

- 11 -

friction reduction tool for the first time at trial. *Contra* Dkt. 388 at 6. But as Dr. Noynaert discussed during his direct examination, each aspect of his testimony is supported by the disclosures of Gilleylen. *E.g.*, Trial Tr. at 111:2–11 (Mar. 3, 2026).

Once again, Impulse points to Dr. Kytömaa's testimony to support its argument in favor of judgment as a matter of law for the '337 Patent. But like with the '976 and '584 Patents, Impulse's attempt to seek judgment as a matter of law must fail in the face of competing evidence that the jury is not "required to believe." *Reeves*, 530 U.S. at 151.

**D.    Impulse is Not Entitled to Judgment as a Matter of Law on Damages**

Impulse concludes its motion with a scattershot argument directed at DWS's damages model, rehashing arguments this Court rejected when Impulse raised them in its failed *Daubert* motion. Dkt. 322 at 72:5, 13–14. The Court should reject them again here.

**1.    DWS properly apportioned the value of the only allegedly inventive aspect of the Asserted Claims.**

The law requires patentees "in *every* case [to] give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). The "essential requirement" is that any reasonable royalty must be based on "the incremental value that the patented invention adds to the end product." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (en banc). This requirement applies even where the claims cover an entire multicomponent product, because the patentee must still apportion between the value of the alleged improvement and conventional features. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377–80 (Fed. Cir. 2021); *Exmark*, 879 F.3d at 1348. Where the patentee fails to provide legally sufficient evidence of apportionment, damages cannot stand and

- 12 -

may be limited to nominal damages. *Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1301 (Fed. Cir. 2025) (affirming judgment as a matter of law reducing damages to $1).

Accordingly, DWS's damages expert, Stephen Dell, properly and cogently presented a royalty base that accurately reflects the allegedly novel aspects of the Asserted Patents. Impulse's claim that DWS improperly deducted shock tools from the royalty base is without merit, as is its assertion that DWS failed to oppose this argument during *Daubert* briefing. *Contra* Dkt. 388 at 6. Impulse's own corporate representative admitted that Impulse did not invent the shock tool or any other physical component of a friction reduction tool. Trial Tr. at 154:23–156:16 (Feb. 25, 2026); *see also id.* at 33:10–24 (describing the inventors' familiarity with shock tools and other components of friction reduction tools based on prior industry experience). Thus, any proper damages model must "separate the damages between the patented improvement and the conventional components of the multicomponent product."[7] *Exmark*, 879 F.3d at 1348. As the Federal Circuit recognized in *Exmark*, such apportionment can be addressed "in a variety of ways, ***including by careful selection of the royalty base*** to reflect the value added by the patented feature." *Id.* (emphasis added); *see also* Trial Tr. at 21:4–11, 24:10–31:2 (Mar. 4, 2026). That is exactly what Mr. Dell did in this case.

For the same reasons, Mr. Dell properly used DWS's bills of materials to apportion the royalty rate by separating the allegedly novel components of the accused products from the conventional components. *See Exmark*, 879 F.3d at 1348 ("We hold that such apportionment can be done in this case through a thorough and reliable analysis to apportion the royalty rate.") Mr. Dell did not use DWS's profits as a cap. Indeed, the Federal Circuit has expressly endorsed

---

[7] DWS made this argument nearly verbatim in its Opposition to Impulse's *Daubert* Motion against Mr. Dell. *See* Dkt. 215 at 7–11.

damages calculations like Mr. Dell's. In *Summit 6, LLC v. Samsung Electronics Co.*, Samsung's damages expert used its "annual reports, internal cost and revenue spreadsheets, and interrogatory responses to determine that the [accused] component accounted for 6.2% of the phone's overall production cost." 802 F.3d 1283, 1297 (Fed. Cir. 2015). "Accordingly, he attributed 6.2% of Samsung's revenue from selling each phone—i.e., \$14.15—to the [accused] functionality." *Id.* The Federal Circuit held that this methodology, which "estimated Samsung's economic benefit from infringement . . . by valuing those infringing features based on Samsung's own data regarding use and on its own financial reports outlining production costs and profits," "was based on reliable principles and was sufficiently tied to the facts of the case." *Id.* at 1298. So too here.

A reasonable royalty award must be adequate to compensate for "the use made of ***the invention***." 35 U.S.C. § 284 (emphasis added). In this case, the "invention" is not a friction reduction tool as a whole. Impulse did not invent the first friction reduction tool. Trial Tr. at 156:10–16 (Feb. 25, 2026). Nor is it a positive displacement motor, shock tool, or the concept of ball-drop selective activation. Impulse did not invent those either. Trial Tr. at 154:23–156:16 (Feb. 25, 2026). Impulse's futile incantation of the phrase "novel combination" aside, the record demonstrates that the ***only*** arguably novel aspect of the Asserted Patents is a specific pattern of pressure pulses, either irregular or cyclic, polyrhythmic. Trial Tr. at 123:19–125:18 (Mar. 3, 2026). Impulse relies on *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1328 (Fed. Cir. 2015), to argue that the reasonable royalty should focus on the Asserted Patents' allegedly novel combination of otherwise conventional elements. Dkt. 388 at 9. As an initial matter, *AstraZeneca* was decided before the Federal Circuit's clear holdings in *Exmark* and *Omega Patents*. Moreover, the Federal Circuit found in *AstraZeneca* that the patented formulation of omeprazole "substantially created the value" of the entire commercial product. *AstraZeneca*, 782 F.3d at 1339. Here, the record is

devoid of any such evidence, particularly because Impulse did not present an Entire Market Value Rule ("EMVR") damages model. *E.g.*, *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 957–58 (Fed. Cir. 2024) (granting new trial on damages and rejecting application of EMVR where patentee's expert failed to explain why conventional features of the accused products "do not provide any valve or drive customer demand," and noting lack of evidence proving allegation that patented features drove customer demand").

And even in *ThinkOptics*—the authority of which is at least questionable in light of the Federal Circuit's holdings in *Exmark* and *Omega*—the Eastern District of Texas acknowledged that it can be "necessary to apportion the smallest salable patent practicing unit to remove the value of unclaimed elements." *ThinkOptics, Inc. v. Nintendo of America, Inc.*, No. 6:11-cv-455, 2014 WL 2859578, at *1–2 (E.D. Tex. June 21, 2014). This is because "the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment." *Virnetx, Inc. v. Cisco Sys. Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). This case presents exactly such a fact pattern: the smallest salable patent-practicing unit comprises multiple components that Impulse's own witnesses admit they did not invent. Thus, a proper damages model separates out the value of those components to ensure that Impulse is compensated only for the patented improvement, i.e., the claimed pressure pulse pattern, rather than the entire friction reduction tool. *Exmark*, 879 F.3d at 1348.

Notwithstanding Impulse's confusing request for "JMOL of infringement that DWS's damages base is improper," Dkt. 388 at 6, the royalty base DWS presented at trial was proper—indeed, the ***only*** legally proper royalty base presented at trial—and a reasonable jury could credit it. Accordingly, the Court should deny Impulse's motion.

- 15 -

**2.** **DWS properly derived its royalty rate from the only comparable license in this case.**

As to the royalty rate, Impulse once again retreads the same argument this Court rejected at the *Daubert* stage: that Mr. Dell's analysis of the Impulse-Rubicon settlement agreement was improper. The Court rejected those arguments once and should do so again.

Mr. Dell did not opine that Impulse or Rubicon "agreed that the lump sum payment ($700,000) would be representative of a reasonable royalty." *Contra* Dkt. 388 at 7. Rather, Mr. Dell extensively analyzed the facts and circumstances relevant to the agreement and found it to be relevant to the ultimate question of what a reasonable royalty *in this case* would be. Trial Tr. at 38:10–42:21 (Mar. 4, 2026). Indeed, there can be no legitimate dispute that the Impulse-Rubicon settlement agreement is the *only* agreement containing a license to the '976 and '584 Patents at issue in this case. Accordingly, such an analysis is proper, as this Court has already found.

*EcoFactor* does not say otherwise. In that case, EcoFactor's damages expert misinterpreted the language of the licenses at issue and testified that the parties to those agreements *each agreed* to pay an $X royalty rate. *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1341–43 (Fed. Cir. 2025). EcoFactor's expert based that testimony on a "whereas" clause expressly stating that EcoFactor alone—not both parties—believed the lump sum amount to reflect a reasonable royalty. *Id.* at 1343. But Mr. Dell did not opine that Impulse and Rubicon *mutually agreed* to a 3.68% effective royalty. Rather, Mr. Dell testified that the agreement remains "relevant" to calculating a reasonable royalty in this case as an input into a proper *Georgia-Pacific* analysis. Trial Tr. at 39:16–40:5 (Mar. 4, 2026). The Impulse-Rubicon agreement is a relevant benchmark for the hypothetical negotiation, nothing more.

A reasonable jury could credit Mr. Dell's analysis on the royalty rate, just as it could on the base. Accordingly, the Court should deny Impulse's motion on this issue too.

**CONCLUSION**

For at least the foregoing reasons, the Court should deny Impulse's motion.

Dated: March 26, 2026

Respectfully submitted,

/s/ *Michael D. Karson*
Michael D. Karson
Attorney-in-Charge
  Texas State Bar No. 24090198
  SDTX Fed. No. 3293023
Phillip B. Philbin
  Texas State Bar No. 15909020
  SDTX Fed. No. 11636
Jamie H. McDole
  Texas State Bar No. 24082049
  SDTX Fed. No. 1626626
David W. Higer
  Texas State Bar No. 24127850
  SDTX Fed. No. 3757251
Miranda Y. Jones
  Texas State Bar No. 24065519
  SDTX Fed. No. 1147635
Matthew L. Vitale
  Texas State Bar No. 24137699
  SDTX Fed. No. 3864676
Cody M. Carter
  Texas State Bar No. 24131091
  SDTX Fed. No. 3903320
Eugene M. Massad, III
  Texas State Bar No. 24126247
  SDTX Fed. No. 3943590
WINSTEAD PC
2728 N. Harwood Street
Suite 500
Dallas, Texas 75201
Telephone: (214) 745-5400
Fax: (214) 745-5390
Email: mkarson@winstead.com
        pphilbin@winstead.com
        jmcdole@winstead.com
        dhiger@winstead.com
        mjones@winstead.com
        mvitale@winstead.com
        ccarter@winstead.com
        emassad@winstead.com

Austin C. Teng
  Texas State Bar No. 24093247
  SDTX Fed. No. 3747245
Nadia E. Haghighatian
  Texas State Bar No. 24087652
  SDTX Fed. No. 2598876
Omar A. Marawi
  Texas State Bar No. 24120991
  SDTX Fed. No. 3736903
WINSTEAD PC
600 W. 5th Street, Suite 900
Austin, TX  78701
Telephone: (512) 370-2800
Fax: (512) 370-2850
Email: ateng@winstead.com
        nhaghighatian@winstead.com
        omarawi@winstead.com

Kyle Watson
  Texas State Bar No. 24047078
  SDTX Fed. No. 572417
WINSTEAD PC
24 Waterway Avenue
Suite 500
The Woodlands, Texas 77380
Telephone: (281) 681-5900
Fax: (281) 681-5901
Email: krwatson@winstead.com

*Attorneys for Defendant*
*Downhole Well Solutions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 26, 2026, I electronically submitted the foregoing document with the clerk of the United States District Court for the Southern District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

/s/ Michael D. Karson
Michael D. Karson

- 20 -